Otto D. GRAY, etc., et al., Plaintiffs-Appellants,

v.

SWANNEY–McDONALD, INC.,
Defendant-Appellee.

William LAWMAN, Plaintiff-Appellant,

v.

SWANNEY–McDONALD, INC.,
Defendant-Appellee.

Nos. 24476, 24504.

United States Court of Appeals,
Ninth Circuit.

Jan. 4, 1971.

Rehearings Denied Feb. 1, 1971.

Fred J. Martino, Beverly Hills, Cal., for appellants.

G. G. Baumen, Los Angeles, Cal., for appellee.

Laurence H. Silberman, Solicitor of Labor, Bessie Margolin, Associate Solicitor, Carin Ann Clauss and Donald S. Shire, Washington, D. C., amici curiae.

Before CARTER, HUFSTEDLER, and TRASK, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Appellants, 12 tow truck drivers, appeal from the dismissal of their action against Swanney-McDonald, Inc., seeking to recover overtime compensation to which they claim entitlement under section 7(a) (1) of the Fair Labor Standards Act, 29 U.S.C. § 207(a) (1). Appellants contend that the district court erred in holding that Swanney-McDonald was exempted from coverage of the Act by 29 U.S.C. § 213(a) (2) and in holding that part of their claims were barred by limitations. Appellees respond that the district court correctly decided both issues, but that it need not have decided either had the court not erred in finding that appellant's work was in interstate commerce.

We first take up appellee's contention that the appellants were not engaged in interstate commerce and thus were not subject to the Act. Swanney-McDonald, Inc., is a California corporation having its principal place of business in Los Angeles where it operates an automotive tow service garage providing tow service and emergency road service for disabled motor vehicles in the greater Los Angeles area. Appellants were the drivers who did the actual towing and road servicing. Among the areas they serviced were a number of Interstate and U.S. Highways making up the freeway system of Los Angeles. On rare occasions calls were made out of this area, and on even rarer occasions calls were made out of state. The total number of such calls constituted less than one percent of appellee's business.

The servicing of traffic moving on interstate highways is a significant part of interstate commerce, but, appellee argues, its employees spent so little time doing that work that the interstate aspect of their duties was *de minimis*. The district court thought not, and we agree. The provision of towing and road services for the national highway system is essential to the free flow of traffic on that system. The fact that such services are a small part of appellee's business renders them no less important to interstate commerce. Even if appellee's contribution to interstate commerce was, by itself, quite small, we cannot ignore the cumulative effect that the many small companies in appellee's position have upon commerce between the states. By regularly servicing vehicles on the Interstate and U.S. Highways, appellee has become part of an industry the cumulative effect of which upon interstate commerce is substantial. Congress intended the Fair Labor Standards Act to cover such an industry, which necessarily means that the Act covers each and every member of that industry. The only way to regulate the whole is to regulate each discrete part. The fact that any given, or every given, company's contacts with interstate commerce are extremely small is irrelevant. (Dickenson v. United States (9th Cir. 1966) 353 F.2d 389. *See also* Southern California Freight Lines v. McKeown (9th Cir.) 148 F.2d 890, cert. denied (1945) 326 U.S. 736, 66 S.Ct. 46, 90 L. Ed. 439.) [1]

Beyond the requirement that the employees of the business in question be engaged in interstate commerce, the Fair Labor Standards Act contains a specific exemption for "retail or service establishments" which meet certain requirements as to the volume and source

---

1. Appellee mistakenly relies upon Mateo v. Auto Rental Co. [(9th Cir. 1957) 240 F.2d 831] as holding the contrary position. In that case the district court found that none of the defendant's activities involved interstate commerce at all. There was, therefore, no problem with the cumulative effects of small contributions to the flow of goods for there was no contribution at all.

of their business. Retail or service establishments are defined as any establishment "75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry * * *." 29 U.S.C. § 213(a) (2). Appellants do not challenge appellee's right to an exemption if the appellee can qualify as a retail or service establishment. They contend that the district court's implied finding that appellee was such an establishment was clearly erroneous because appellee did not prove that no more than 25 percent of its business was for resale. The issue turns on the nature of the business done for the National Auto Club and for local automobile repair shops. During the years in question, appellee towed cars for members of the National Auto Club and charged the Club directly. The Club did not bill its members directly for that charge, but absorbed it as part of its overhead. Similarly, appellee towed disabled vehicles to repair shops that did not in turn charge the vehicle's owner directly, but absorbed the cost as overhead. Appellee seizes upon this business practice to argue that these transactions are not sale of services for resale. The district court apparently adopted that argument;[2] we do not. Particularly persuasive is the decision of the Fourth Circuit in Mitchell v. Sherry Corine Corp., 264 F.2d 831, cert. denied (1959) 360 U.S. 934, 79 S.Ct. 1453, 3 L.Ed.2d 1546. The issue was whether or not the sale of meals to airlines was not for resale because the airlines did not directly charge the passengers for the meals. The court held that the meals were for resale, emphasizing the economic reality that the cost of the meals was reflected in the price paid for the ticket. Appellee's situation is identical: The cost to the Auto Club and to the repair shops of appellee's towing services was not a gift to their customers; the cost was passed on in the form of increased membership fees and repair rates and resold as surely as if it had been part of an itemized bill. Therefore, unless appellee can establish on remand that these items constituted 25 percent or less of the dollar volume of his business, it is entitled to no exemption from coverage of the Fair Labor Standards Act.

■ The appellants next challenge the district court's ruling that their respective claims for compensation were, in part, barred by the two-year limitation period prescribed by 29 U.S.C. § 255. Appellants worked for Swanney-McDonald at various times during the period 1964 to 1966. The action was filed in August 1968.[3] The court held that limitations was not tolled by the filing of the complaint, but only by the claimants' filing answers to interrogatories. The holding was based upon the court's interpretation of and application of 29 U.S.C. § 256, which provides in pertinent part:

"In determining when an action is commenced for the purposes of section 255 * * * an action * * * shall be considered to be commenced on

2. Although the district court did not make an explicit finding to this effect, such a finding is implicit in its finding that appellee did 75 percent of his business not for resale. In establishing the percentage of business done not for resale in order to gain an exempt status the burden of proof is on the party claiming the exemption. Idaho Sheet Metal Works v. Wirtz, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966). In this case, appellee introduced no evidence as to the percentage of his dollar volume attributable to these sales. Therefore, the district court could not have found that appellee had met its burden unless the court found that these sales were not for resale.

3. Not all of the appellants joined in the original complaint; one filed his own action. The actions were consolidated for trial and will, for simplicity's sake, be referred to as though brought as one from the beginning. The effect of the statute of limitations on the rights of each of the individual appellants will, of course, depend upon the date on which the original complaint in which he was named was filed.

the date when the complaint is filed; *except that in the case of a collective or class action* instituted under the Fair Labor Standards Act of 1938 * * *, it shall be considered to be commenced in the case of any individual claimant—

"(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

"(b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced." (Emphasis added.)

The court decided that the appellants' complaint was a "collective" action and that no "consent" had been filed until responses were made to interrogatories.

The Act itself does not define the unusual expression "collective action." But the legislative history indicates that Congress intended the term to apply only to a representative action. The Conference Report states that a "collective action [is] an action brought by an employee or employees for and in behalf of himself or themselves *and other employees similarly situated. * * *"* (H. R.Rep. No. 326, 80th Cong., 1st Sess. p. 14.) (Emphasis added.) The intent was to limit the res judicata effect of an action under this Act to those who chose to be involved in it. (Deley v. Atlantic Box & Lumber Corp. (D.N.J.1954) 119 F.Supp. 727.) This action was not brought for the benefit of unnamed plaintiffs, or in the name of any plaintiff who was suing in a representative capacity. Each plaintiff sued for himself. No res judicata effect could attach to anyone other than the named parties. The joinder of several plaintiffs in a single action does not convert their individual suits into a "collective or class action."

The judgment is reversed and the cause is remanded for further proceedings consistent with the views herein expressed.