Ramon **BONILLA**, Sylvia Glez, Agapito Torres, Jose Luis Guareno, Nelson Ventura, Leonardo Rosario, Gilberto Rodriguez, Jorge Amadiz, Pedro Rosaria, Santiago Estrella, on behalf of themselves and all other employees of Las Vegas Cigar Company similarly situated, Plaintiffs,

v.

**LAS VEGAS CIGAR COMPANY,** Defendant.

No. CV–S–98–1298PMP (RLH).

United States District Court, D. Nevada.

Aug. 18, 1999.

Jose C. Pallares, Las Vegas, NV, for plaintiffs.

Malani L. Kotchka, Smith & Kotchka, Las Vegas, NV, for defendant.

### ORDER

PRO, District Judge.

Presently before the Court is Defendant Las Vegas Cigar Company's (hereinafter "Las Vegas Cigar") Motion for Summary Judgment (# 18) filed May 25, 1999. Plaintiffs, Ramon Bonilla, Sylvia Glez, Agapito Torres, Jose Luis Guareno, Nelson Ventura, Leonardo Rosario, Gilberto Rodriguez, Jorge Amadiz, Pedro Rosaria, Santiago Estrella (collectively "Plaintiffs"), filed Plaintiffs' Opposition to Motion for Summary Judgment (# 19) on June 11, 1999. Las Vegas Cigar filed Defendant's Reply to Plaintiffs' Opposition to Motion

for Summary Judgment (# 34) on July 6, 1999.

### I. Factual and Procedural Background

Plaintiffs were employees of Las Vegas Cigar. On September 16, 1998, they filed a Complaint "on behalf of themselves and all other employees of Las Vegas Cigar Company similarly situated," claiming that Las Vegas Cigar had violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219.[1] Generally, Plaintiffs seek to recover unpaid minimum wages, overtime compensation, liquidated damages, and attorney's fees. Las Vegas Cigar answered the Complaint on January 21, 1999, by denying any violation of the FLSA, and also asserting several defenses, including that the Plaintiffs' claims were barred by the statute of limitations.

On May 25, 1999, Las Vegas Cigar moved for summary judgment, asserting that Plaintiffs had failed to file consent to suit forms with the Court as required by 29 U.S.C. §§ 216(b) and 256 to commence the action for purposes of the statute of limitations. After this motion was filed, eight of the eleven named Plaintiffs filed consent to suit forms with the Court. Two named Plaintiffs, Gilberto Rodriguez and Jose Luis Guareno, admitted in Interrogatories that they have never filed a consent to suit form, and there is no record that the remaining named Plaintiff, Pedro Rosaria, has filed a consent to suit form with the Court.

### II. Discussion

#### A. Summary Judgment and the Statute of Limitations

The Court must reject Plaintiffs' argument that summary judgment is an "inappropriate challenge" to a "procedural defect in the Complaint," and Plaintiffs' contention that the Court should treat Las Vegas Cigar's motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. It is appropriate for this Court

---

1. The original complaint included several other plaintiffs and another defendant. These parties were severed from this proceeding on January 11, 1999.

to consider summary judgment on a meritorious statute of limitations claim. *See 389 Orange St. Partners v. Arnold,* Nos. 97–35877, 98–35005, 98–35240, 1999 WL 355959, at *2 (9th Cir. June 4, 1999) (affirming district court's grant of summary judgment barring claims under statute of limitations); *Ott v. United States,* 141 F.3d 1306, 1310 (9th Cir.1998) (same).

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *See Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1050 (9th Cir.1995). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *See S.E.C. v. Seaboard Corp.,* 677 F.2d 1297, 1298 (9th Cir.1982).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

### B. Claims Barred by Statute of Limitations

Las Vegas Cigar contends that Plaintiffs' claims are completely or partially barred by the applicable statute of limitations for private rights of action under the FLSA. Plaintiffs do not seriously dispute this contention, but argue that "failure to file signed consents ... simultaneously with the Complaint is not fatal; the consents may be filed after the complaint, commencing the action pursuant to 29 U.S.C. Section 256." (Pls.' Opp'n to Mot. for Summ.J. at 3).

Title 29 U.S.C. § 216(b) of the FLSA provides that employees may bring private actions for themselves "and other employees similarly situated" against employers who violate the FLSA. 29 U.S.C. § 216(b) (1999). Section 216(b) further provides, "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* Under the provisions of the Portal–to–Portal Act of 1947, 29 U.S.C. §§ 251–262, claims must be brought within two years of the alleged FLSA violation. *See* 29 U.S.C. § 255 (1999). Pursuant to 29 U.S.C. § 256, an action is commenced,

> on the date when the complaint is filed; except that in the case of a collective or class action instituted under the Fair Labor Standards Act ... it shall be considered to be commenced in the case of any individual claimant—
>
> > (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his name did not so appear-on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256 (1999).

 The statutory language is clear. When plaintiffs have filed a "collective action," under § 216(b),[2] all plaintiffs, includ-

---

**2.** The Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, and Equal Pay Act, 29 U.S.C. § 206(d), also incorporate § 216(b)'s collective action provisions. *See* 29 U.S.C. § 626(b); 29 U.S.C. § 206(d). For purposes of this discussion, it is irrelevant as to which statute each case relates. The question of what constitutes a collective action

ing named plaintiffs, must file a consent to suit with the court in which the action is brought. Although the consents may be filed after the complaint, the action is not deemed commenced with respect to each individual plaintiff until his or her consent has been filed. *See Atkins v. General Motors Corp.*, 701 F.2d 1124, 1130 n. 5 (5th Cir.1983) (affirming district court's refusal to allow certain plaintiffs to intervene where plaintiffs had not opted in before running of statute of limitations); *Partlow v. Jewish Orphans' Home of Southern Cal., Inc.*, 645 F.2d 757, 760 (9th Cir.1981) ("It is true that the FLSA statute of limitations continues to run until a valid consent is filed."); *Cash v. Conn Appliances, Inc.*, 2 F.Supp.2d 884, 897 (E.D.Tex.1997) (stating that in collective actions, statute of limitations continues to run until consent filed); *Salazar v. Brown, Jr.*, No. G87–961, 1996 WL 302673, at *10–11 (W.D.Mich. Apr. 9, 1996) (analyzing cases which held that statute of limitations under § 256 is tolled when written consents are filed for each plaintiff); *Graham v. City of Chicago*, 828 F.Supp. 576, 583 (N.D.Ill.1993) (finding that complaint commences when consent filed). By contradistinction, a suit which consists of a number of individual actions joined under Rule 20(a) of the Federal Rules of Civil Procedure is not a "collective action," and plaintiffs need not file a consent to suit in order to commence the action. *See Allen v. Atlantic Richfield Co.*, 724 F.2d 1131, 1134–35 (5th Cir.1984); *Morelock v. NCR Corp.*, 586 F.2d 1096, 1103 (6th Cir.1978); *Gray v. Swanney–McDonald, Inc.*, 436 F.2d 652, 655 (9th Cir.1971).

The question thus becomes whether Plaintiffs have filed a "collective action" within the meaning of § 216(b), or a number of individual actions joined under Rule 20(a) of the Federal Rules of Civil Procedure. Although the statute itself does not define "collective action," the Ninth Circuit Court of Appeals has indicated that a collective action is "an action brought by an employee or employees for and in behalf of themselves and other employees similarly situated." *Gray*, 436 F.2d at 655 (quoting H.R.REP. No. 326, 80th Cong., 1st Sess. at 14) (internal quotations omitted). In *Gray*, the Ninth Circuit Court of Appeals determined that the case was not a collective action where the action "was not brought for the benefit of unnamed plaintiffs, or in the name of any plaintiff who was suing in a representative capacity." *Gray*, 436 F.2d at 655.

In the present case, the Complaint states that the Plaintiffs are suing "on behalf of themselves and all other employees of Las Vegas Cigar Company similarly situated." The language parrots § 216(b), and *Gray*, and would thus seem to invoke the collective action requirements of the FLSA. However, the Fifth Circuit Court of Appeals found that such language did not automatically infer a collective action. *See Allen*, 724 F.2d at 1135 (holding that language in complaint that plaintiffs sought to represent "other similarly situated Atlantic Richfield employees" not dispositive on question of collective action). The *Allen* court stated that the action "never evolved into a collective or class action since no unnamed plaintiff ever came forward and filed a written consent to the suit," and all named plaintiffs alleged individual causes of action and sought individual relief. *Id.* at 1135.

After examining the statute's provisions and other authorities, the Court

where plaintiffs must opt in under § 216(b) is the same. However, some courts have held that the ADEA does not incorporate § 256. *See Morelock v. NCR Corp.*, 586 F.2d 1096, 1103 (6th Cir.1978). Additionally, the Supreme Court has urged courts to read remedial statutes such as the ADEA and FLSA broadly. *See Lambert v. Ackerley*, 180 F.3d 997, 1002–03 (9th Cir.1999) (citing *Tennessee Coal, Iron, & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944)), *modifying*, 169 F.3d 666 (9th Cir. 1999). However, with respect to the FLSA, Congress expressed an intent to narrow the scope of collective actions under the FLSA through § 216(b) when the Portal–to–Portal Act was passed. *See United States v. Cook*, 795 F.2d 987, 992–93 (Fed.Cir.1986) (quoting 93 Cong.Rec. 2182 (Remarks of Senator Donnell)).

concludes that the Ninth Circuit Court of Appeals would not adopt the approach taken by the Fifth Circuit Court of Appeals in *Allen.* Section 216(b) itself does not require any unnamed plaintiff to opt into the lawsuit in order for the action to be a collective action. According to the express terms of the statute, named plaintiffs can commence a collective action by filing the complaint and their written consents. For statute of limitations purposes, the action is commenced on the date the complaint and consents are filed, regardless of whether any other plaintiff ever opts in. *See* 29 U.S.C. § 256 (1999). Unlike class actions governed by Rule 23 of the Federal Rules of Civil Procedure, which are characterized by automatic inclusion of all class members and "opt out" requirements, unnamed plaintiffs in a § 216(b) action are not automatically parties to the lawsuit and are not bound by the judgment unless they opt in by filing their consent. *See Dolan v. Project Constr. Corp.,* 725 F.2d 1263, 1266 (10th Cir.1984); *Partlow,* 645 F.2d at 758. The mere fact that no unnamed plaintiff chose to exercise this option is irrelevant to the determination of whether Plaintiffs filed a collective action at the outset.

Under the *Allen* court's interpretation, if plaintiffs file a complaint purporting to seek relief for themselves and others similarly situated, but do not file consents, they are at the mercy of any unnamed plaintiff opting into the lawsuit. Once another plaintiff opts in, the named plaintiffs would have to file their consents, and the statute of limitations would be tolled from the date the consents are filed, not from the date of the complaint. Thus, whether the lawsuit is determined to be a collective action would be based not on the individuals already parties to the lawsuit but instead upon potential parties, a result not intended by the statute.

Several courts outside the Ninth Circuit have handled the determination of what constitutes a collective action under § 216(b) by analogizing the statute to the Rule 23 class action. These courts have "certified" or "authorized" the action to proceed as a collective action, much the same way Rule 23 class actions are required to be certified. *See Brzychnalski v. Unesco, Inc.,* 35 F.Supp.2d 351, 354 (S.D.N.Y.1999); *Thiessen v. General Elec. Capital Corp.,* 996 F.Supp. 1071, 1085 (D.Kan.1998); *Hoffman v. Sbarro, Inc.,* No. 97 CIV.4484(SS), 1997 WL 736703, at *1 (S.D.N.Y. Nov. 26, 1997); *Cash,* 2 F.Supp.2d at 897; *Hyman v. First Union Corp.,* 982 F.Supp. 1, 6 (D.D.C.1997); *Abrams v. General Elec. Co.,* No. 95–CV–1734(FJS), 1997 WL 458446, at *3 n. 1 (N.D.N.Y. Aug. 4, 1997); *Bayles v. American Med. Response of Colo., Inc.,* 950 F.Supp. 1053, 1067 (D.Colo.1996) (decertifying),[3] *reconsidered,* 962 F.Supp. 1346 (D.Colo.1997); *Wyatt v. Pride Offshore, Inc.,* No. 96–1998, 1996 WL 509654, at *2 (E.D.La. Sept. 6, 1996); *Brooks v. Bellsouth Telecommunications, Inc.,* 164 F.R.D. 561, 569 (N.D.Ala.1995) (decertifying), *aff'd,* 114 F.3d 1202 (11th Cir.1997); *Crain v. Helmerich and Payne Int'l Drilling Co.,* No. 92–0043, 1992 WL 91946, at *3 (E.D.La. Apr. 16, 1992); *Lusardi v. Xerox Corp.,* 118 F.R.D. 351, 370 (D.N.J.1987) (decertifying), *appeal dismissed,* 855 F.2d 1062 (3d Cir.1988); *Aguirre v. Bustos,* 89 F.R.D. 645, 649 (D.N.M.1981).[4]

3. This opinion is demonstrative of the type of confusion which clouds the distinction between Rule 23 and § 216(b) actions. After concluding that there is "no basis to conclude that the paradigm of Rule 23 can be engrafted upon § 216(b)," the court "decertified" a portion of the action, *see Bayles,* 950 F.Supp. at 1067, despite the fact that it is Rule 23 which requires certification, not § 216(b).

4. This Court has been able to locate only two Court of Appeals cases reviewing the factors a district court should employ in determining how to "certify" a § 216(b) action. *See Mooney v. Aramco Servs. Co.,* 54 F.3d 1207 (5th Cir.1995); *Lusardi v. Xerox Corp.,* 855 F.2d 1062 (3d Cir.1988). In *Mooney,* the Fifth Circuit Court of Appeals declined to specify any particular method for certification, 'and merely stated that the district court did not abuse its discretion in determining that plaintiffs were not similarly situated. *See Mooney,* 54 F.3d at 1216. In *Lusardi,* the Third Circuit Court of Appeals stated, in a footnote,

This method holds a certain appeal. First, courts are on familiar ground using the Rule 23 standards. Second, the issue in this case could easily be resolved by using such a methodology. In a Rule 23 class action, the statute of limitations for plaintiffs' individual claims is suspended for all purported members of the class until a formal decision on class certification has been made, or until the individual plaintiff opts out. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), *reh'g denied*, 415 U.S. 952, 94 S.Ct. 1477, 39 L.Ed.2d 568 (1974); *Tosti v. Los Angeles*, 754 F.2d 1485 (9th Cir.1985). If Rule 23 principles were applicable here, the statute of limitations could be considered suspended until this Court made a formal determination on whether this is a collective action or not. If the Court determined the suit to be a collective action, Plaintiffs' claims not within two years of the filing of their consents would be barred. If the Court determined that this was not a collective action, the statute of limitations would be tolled on the date the Complaint was filed for each of the named Plaintiffs. However, this Court has never been specifically asked by either party to "certify" or "authorize" this case to proceed as a collective action. Both parties have simply presumed it to be a collective action.

Despite the allure of the "certification" method, other courts have held that Rule 23 class actions and § 216(b) collective actions are "mutually exclusive," "irreconcilable," and do not follow the same rules and requirements. *LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir.1975); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir.1996) (commenting that Rule 23's requirements are more complicated than § 216(b)'s "unitary 'similarly situated'" requirement); *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862 (9th Cir.1977) (holding that, unlike in Rule 23 actions, district courts cannot give notice to potential plaintiffs in a § 216(b) action); *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir.1975) (holding that Rule 23 and § 216(b) are irreconcilable); *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 306 (N.D.Cal.1991) (stating that if plaintiffs cannot bring Rule 23 class action under § 216(b), plaintiffs need not meet requirements of Rule 23).

Congress specifically laid out different, and in many respects opposite, procedures for § 216(b) collective actions. In response to a fear that outsiders who had no employment interests in a company would stir up litigation, Congress eliminated representative actions under the FLSA where the plaintiff is not an employee. *See United States v. Cook*, 795 F.2d 987, 992–93 (Fed.Cir.1986) (quoting 93 Cong.Rec. 2182 (Remarks of Senator Donnell)). As Senator Donnell, chairman of the subcommittee which conducted hearings on the amendments explained, Congress had "no objection" to representative suits initiated by an employee on behalf of himself and others similarly situated. *Id.* at 992. Senator Donnell termed this type of action a "collective action." *Id.* at 992. The Senator went on to explain that cases in which employees name a representative plaintiff who had no employment relationship with the employer would no longer be permitted. *See id.* at 992–93. Therefore, Congress explicitly crafted distinct procedures which would ensure that each plaintiff to a collective action under § 216(b) would personally consent to the suit, while still preserving a method by which employees could collectively sue on behalf of themselves and others similarly situated. *See Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 176, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (Scalia, J. dissenting) (observing that § 216(b) is a limitation on the affirmative permission for representative actions under Rule 23), *aff'g* 862 F.2d 439 (3d

that the court would be "inclined" to treat § 216(b) collective actions as "spurious" class actions under Rule 23 prior to the 1966 Amendments to the rule. *See Lusardi*, 855 F.2d at 1074 n. 15.

Cir.1988). The Advisory Committee Notes to the 1966 Amendments to Rule 23 state that § 216(b) actions are specifically excluded from Rule 23's strictures. *See Kuhn v. Philadelphia Elec. Co.,* 487 F.Supp. 974, 977 (E.D.Pa.1980). Thus, some courts have concluded that Rule 23 and § 216(b) are two entirely different procedures, and § 216(b) is not to be governed by Rule 23's principles.

However, the Supreme Court abrogated opinions such as *Kinney Shoe* insofar as they held that district courts could not give notice to potential plaintiffs in a § 216(b) action. The Supreme Court found that district courts could, in their discretion, send notice of a § 216(b) collective action to potential plaintiffs, despite the fact that § 216(b) says nothing about allowing such notice to be given. *See Sperling,* 493 U.S. at 169, 110 S.Ct. 482. In so doing, the Supreme Court compared § 216(b) collective actions to Rule 23 class actions. *See id.* 493 U.S. 165, 110 S.Ct. at 486. Thus, the fact that § 216(b) does not require, or even mention, "certification" or "authorization" does not seem dispositive of the question as to whether it is appropriate for courts to "certify" § 216(b) collective actions. By implication, the Supreme Court has approved of applying at least some of the incidents of Rule 23 class actions to § 216(b).[5]

■ To determine whether this Court should adopt the Rule 23 certification methodology, it is useful to examine the purposes of certification in the Rule 23 setting, and to analyze if the same reasoning applies to § 216(b). In Rule 23 class actions, certification serves due process concerns. *See In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768, 784–85 (3d Cir.1995). Certification ensures that unnamed plaintiffs are adequately represented and given notice of the suit because

those parties will be bound by the judgment, for better or worse, unless they opt out of the class action. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809–14, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998) ("To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them.") (citing *Hansberry v. Lee,* 311 U.S. 32, 42–43, 61 S.Ct. 115, 85 L.Ed. 22 (1940)). In a § 216(b) action, no one is bound by the judgment unless they opt in. There is no danger that named plaintiffs are not representative of unnamed plaintiffs, because all plaintiffs will be identified, and, as discussed below, the "similarly situated" test will ensure that all parties are properly joined in the same action. Nor is there a risk that unnamed parties will be bound by a judgment in which they had no participation because only those plaintiffs which opt into the suit are bound by its result. The § 216(b) requirement that plaintiffs consent to the suit serves essentially the same due process concerns that certification serves in a Rule 23 action.

Additionally, the concerns which led the Supreme Court to suspend the statute of limitations in a Rule 23 class action do not apply to a § 216(b) action. The Supreme Court held that the statute of limitations must be suspended after the filing of a class action complaint until a formal certification decision is made because otherwise parties would file protective filings to join or intervene in the suit, "precisely the multiplicity of activity which Rule 23 was designed to avoid." *American Pipe,* 414 U.S. at 551, 94 S.Ct. 756. While Rule 23 was designed to avoid "unnecessary filing of repetitious papers and motions," *id.* at 555, § 216(b) affirmatively *requires* repetitious filings. Because all potential plain-

---

5. The Supreme Court did not specifically address certification of § 216(b) actions or what effect such certification may have on the statute of limitations. The Court was faced with "the narrow question whether, in an ADEA action, district courts may play any role in

prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought." *Sperling,* 493 U.S. at 169, 110 S.Ct. 482.

tiffs to § 216(b) actions *must* file their consent to the suit to toll the statute of limitations, there is no time or resource saving concerns which would justify tolling the statute of limitations from the time the Complaint is filed in a § 216(b) action until some formal "certification" decision is made. Indeed, doing so would violate the express terms of the statute that the action does not commence with respect to each individual plaintiff until they file their consent. The only tolling which makes sense with respect to § 216(b) is to toll the statute of limitations between the time each individual plaintiff consents to the suit, and the time the court dismisses the plaintiff if the court determines that the plaintiff is not "similarly situated," and must pursue their claim individually. *See Lusardi*, 747 F.2d 174, 178 (3d Cir.1984) (noting that probable effect of decertification for opt-in plaintiffs would be "revocation of the consents, a tolling of the statute of limitations, and a notice to the parties that they may proceed individually"). Therefore, the Court concludes that certification does not serve the same purposes in a § 216(b) action as it does in a Rule 23 action.

A closer examination of the cases reveals that most courts that have "certified" a collective action have done so at the request of the parties, usually at the behest of the plaintiffs who seek the court's assistance in sending notice to potential plaintiffs, or who seek discovery of the names and addresses of potential plaintiffs. *See Brzychnalski*, 35 F.Supp.2d at 354 (granting authorization to proceed as a collective action and to give notice); *Realite*, 7 F.Supp.2d at 308 (certifying class for notice and discovery purposes); *Thiessen*, 996 F.Supp. at 1085 (granting plaintiff's motion to certify); *Vaszlavik*, 175 F.R.D. at 685 (granting plaintiff's motion for certification); *Hyman*, 982 F.Supp. at 6 (granting plaintiff's motion to authorize collective action); *Cash*, 2 F.Supp.2d at 897 (allowing discovery to identify potential plaintiffs but eventually denying plaintiffs request for certification); *Wyatt*, 1996 WL 509654, at *1–2 (granting plaintiff's request to certify

while recognizing that although certification not mentioned in § 216(b), many courts have certified actions) (listing cases); *Krueger*, 163 F.R.D. 433, 444 (S.D.N.Y.1995) (plaintiffs move for certification); *Crain*, 1992 WL 91946, at *3 (granting plaintiff's motion to certify). The courts' actions in these cases, therefore, have been more focused on determining what role the court itself should have in issuing notice of the collective action to potential plaintiffs or directing discovery.

Rather than certifying a collective action for purposes of the statute of limitations, certification in a § 216(b) action is thus an effective case management tool. This view of certification is consistent with the *Sperling* court's determination that district courts can give notice to potential § 216(b) plaintiffs. Neither notice nor certification are mentioned in the statute. Both notice and certification are requirements of Rule 23 class actions. *See* Fed.R.Civ.P. 23(c)(1) and (2). In *Sperling*, the Court determined that a district court could, in its discretion, effect notice to unnamed plaintiffs for the purposes of case management. *Sperling*, 493 U.S. at 170–71, 110 S.Ct. 482. Certification can serve the same case management purposes. As pointed out by many of the courts who have adopted such a method, certification allows the court to control the notice procedure, the definition of the class, a cut-off date for opting in, and an orderly joinder of parties. *See Sperling v. Hoffman–La Roche Inc.*, 862 F.2d 439, 447 (3d Cir.1988), *aff'g* 118 F.R.D. 392 (D.N.J.1988); *Garner v. G.D. Searle Pharm. & Co.*, 802 F.Supp. 418, 422 (M.D.Ala.1991).

 Thus, while certification and the "similarly situated" test are important case management tools, the question of what constitutes a collective action for purposes of the statute of limitations must be analyzed apart from any certification or similarly situated determination. Pertinent legislative history regarding the Portal–to–Portal Act amendments to the FLSA suggests that a collective action is an action brought on behalf of the named plaintiffs

and "others similarly situated." *See* 93 Cong.Rec. 2182 (Remarks of Senator Donnell). The statements of the committeeman in charge of presenting a bill to the House should be "taken as the opinion of the committee about the meaning of the bill." NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 48.14, at 361 (5th ed.1992); *see also Kuehner v. Heckler*, 778 F.2d 152, 160 (3d Cir.1985). Such statements are accorded the same weight as committee reports as "the most persuasive indicia of congressional intent in enacting a statute." SINGER, *supra*, §§ 48.06, 48.14, at 322, 361. In *Gray*, the Ninth Circuit Court of Appeals adopted Senator Donnell's definition as to the meaning of a collective action. *See Gray*, 436 F.2d at 655. Based on this authority, the Court concludes that an action is a collective action under § 216(b) where plaintiffs, on the face of their complaint, purport to sue on behalf of themselves and "others similarly situated," [6] as stated in § 216(b) and

---

**6.** Other courts have used a "similarly situated" test to determine whether the action should be certified. *See Cash*, 2 F.Supp.2d at 897; *Wyatt*, 1996 WL 509654, at *2; *Whitworth v. Chiles Offshore Corp.*, No. 92–1504, 1992 WL 235907, at *1 (E.D.La.1992); *Crain*, 1992 WL 91946, at *2. Like certification, the "similarly situated" standard is better employed as an effective case management tool to determine which plaintiffs are properly joined in the action. *See Sperling*, 493 U.S. at 177, 110 S.Ct. 482 (Scalia, J. dissenting) (Courts possess case management power in § 216(b) actions to "satisfy themselves that ... parties are in fact similarly situated ... and have in fact given valid consents to the litigation.") (emphasis in original omitted); *Wyatt*, 1996 WL 509654, at *2 ("The Court, of course, can always consider challenges to the validity of any proposed consent which fails to meet [the requirements of being similarly situated and not purely personal to plaintiff]"); *Crain*, 1992 WL 91946, at *3 n. 3 ("[T]he similarly situated finding allows for unified trial preparation, prosecution and defense of this case"). Because the plain words of the statute require only that plaintiffs be similarly situated and file their consents, if unnamed plaintiffs are "similarly situated," then they should be allowed to remain in, or opt in, to the suit, subject to the court's case management discretion. *See Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 52 (3d Cir.1989) (stating that district court has discretion to determine whether individualized defenses make manageability of class impossible), *rev'd on other grounds*, 54 F.3d 1089 (3d Cir.1995); *Lusardi v. Xerox Corp.*, 855 F.2d 1062, 1078 (3d Cir.1988) (entrusting resolution of case management issues to district court's discretion); *Sperling*, 862 F.2d 439, 444 (3d Cir.1988) (finding that twin requirements of collective action are "similarly situated" and opting in); *New York 10–13 Assoc. v. City of New York*, No. Civ. 1425(JGK), 1999 WL 177442, at *19 (S.D.N.Y. Mar. 30, 1999) (same); *McGinty v. State of New York*, 14 F.Supp.2d 241, 251 (N.D.N.Y.1998) (same); *Krueger*, 163 F.R.D. at 444 (same). Therefore, the Court, upon motions by the parties, will determine whether certain plaintiffs may be a party to the collective action based on whether they are "similarly situated."

Although the question of which, if any, plaintiffs are "similarly situated" is not presently before the Court, in order to assist the parties, the Court notes that the Ninth Circuit Court of Appeals has not formulated a test to determine what "similarly situated" means. Other courts have determined that plaintiffs are similarly situated "when there is 'a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice].' " *Crain*, 1992 WL 91946, at *2 (quoting *Heagney v. European American Bank*, 122 F.R.D. 125, 127 (E.D.N.Y.1988)). Similarly situated plaintiffs need not be identical. *See Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613, 616 (S.D.Tex. 1979). However, a plaintiff cannot proceed in a collective action if " 'the action relates to other specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.' " *Crain*, 1992 WL 91946, at *2 (quoting *Burt v. Manville Sales Corp.*, 116 F.R.D. 276, 277 (D.Colo.1987)). The plaintiffs bear the burden of showing that they are similarly situated, however, this is a lenient burden for plaintiffs to meet, and can be supported by affidavits. *See Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 361 (M.D.Ala.1999). Whether the claims have general effect, and whether named plaintiffs can affirmatively demonstrate that there are other similarly situated potential plaintiffs who would opt in, are factors which are more useful in determining whether the court should issue notice to potential plaintiffs, or permit the discovery of a list of potential plaintiffs. *See Harper*, 185 F.R.D. at 361; *Garner*, 802 F.Supp. at 422. There will be some overlap in these factors. As stated in *Crain*, in order to be similarly situated, the action must not be distinct and specific to

*Gray.* Certification and other trappings of Rule 23 class actions are appropriately applied to § 216(b) actions for purposes of case management, but not for purposes of establishing the tolling of the statute of limitations, as is in the case here.

The Court appreciates the Fifth Circuit Court of Appeals' distaste for § 216(b)'s "time-and-resource-consuming filings." *Allen,* 724 F.2d at 1135. It is indeed redundant and unusual to make named plaintiffs file their consents with the Court. Notwithstanding the fact that the statutory requirements are repetitive or wasteful, they are the unambiguous requirements which Congress has duly enacted. *See Schmidt v. Fuller Brush Co.,* 527 F.2d 532, 536 (8th Cir.1975) ("Any argument that the inclusion of the consent requirement undercuts the broad remedial purposes of the ADEA should be made to the legislature and not to the courts."); *Burrell,* 97 F.Supp. at 282 (E.D.Tenn.1951) (remarking that logically, requiring named plaintiffs to file consents is wasteful; however, § 256 nonetheless requires it). It is not for the courts to rewrite statutes which they find unwise. *See Comm'r of Internal Revenue v. Lundy,* 516 U.S. 235, 252, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996) (Courts are not at liberty to rewrite statutes they might deem "susceptible of improvement.") (citing *Badaracco v. Commissioner,* 464 U.S. 386, 398, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984)); *Zeier v. U.S. Internal Revenue Service,* 80 F.3d 1360, 1365 (9th Cir. 1996). Moreover, the requirements are hardly onerous or burdensome. All Plaintiffs were required to do is file their consents with the Court, which eight of them ultimately did, or simply sign the Complaint. *See Burrell,* 97 F.Supp. at 282 (dismissing as untimely all plaintiffs who did not file consents except one plaintiff who swore to complaint). Plaintiffs who follow these simple requirements will enjoy the benefits of collective action, such as notice to other potential plaintiffs, and the pooling of resources for lower individual

costs. *See Sperling,* 493 U.S. at 169–70, 110 S.Ct. 482. The judicial system will also benefit from the efficiency of one proceeding. *See id.* at 169–70, 110 S.Ct. 482. Additionally, plaintiff-employees who proceed collectively can present a united front against an employer, and head off individualized retaliation.

 In the present case, Plaintiffs' Complaint uses the language "and other employees of Las Vegas Cigar Company similarly situated" nine times in a four-page complaint. The phrase is used in the caption, and in three different paragraphs of the Complaint. Most importantly, and unlike the situation in *Allen,* Plaintiffs seek recovery not only for themselves, but for others similarly situated in their prayer for relief. *See Morelock,* 586 F.2d at 1103 (finding no need for consent where plaintiffs seek individual relief and do not purport to represent others); *Gray,* 436 F.2d at 655 (finding no collective action where action not brought for benefit of unnamed plaintiffs, or in name of plaintiff suing in representative capacity). Therefore, Plaintiffs seek collective relief, and this is a collective action within the meaning of the FLSA. *See Salazar,* 1996 WL 302673, at *9 (holding that complaint which stated "This is a class action" and "the claims of plaintiffs as representative parties are typical of the claims of the classes" was collective action under FLSA as a matter of law). As in *Salazar,* this Court can find no other reasonable interpretation of Plaintiffs' allegations. *See id.* at *9.

Because this is a collective action, each Plaintiff's action commences on the date on which they filed their consent to suit with the Court. Gilberto Rodriguez and Pedro Rosaria have never filed consent to suit forms with the Court. The Complaint alleges that the FLSA violations with respect to Rosaria ended on July 16, 1997, and with respect to Rodriguez on October 18, 1996. Because these Plaintiffs have

---

individual plaintiffs; rather, there must be some general policy or practice. *See Crain,* 1992 WL 91946, at *2. However, whether

there is general effect will also be important in determining whether the Court should engage in large-scale notice procedures.

not filed a consent to suit form within two years of the last alleged violation, their claims are barred by the statute of limitations.

While Jose Luis Guareno has also never filed a consent to suit form with the court, the Complaint alleges that the FLSA violations with respect to him did not end until September 17, 1997. Because Guareno has not opted in, he is dismissed without prejudice as a Plaintiff to the suit. *See Irwin,* 1992 WL 494867, at *6 (dismissing all plaintiffs who had not "opted in"). Guareno can still opt into the suit by filing a consent to suit form with the Court within ten (10) days of this Order, or he may proceed individually by filing a separate complaint. However, his claims will be barred with respect to those claims which are not within two years of the date he files a consent or complaint.

The remaining eight Plaintiffs have all filed consent to suit forms. Therefore, their claims are barred only with respect to those claims not arising within two years of the date they filed their consents, as follows:

| Plaintiff | Consent Filed | Claims Barred Before |
| --- | --- | --- |
| Ramon Bonilla | 6/17/99 | 6/17/97 |
| Sylvia Glez | 6/23/99 | 6/23/97 |
| Agapito Torres | 6/25/99 | 6/25/97 |
| Nelson Ventura | 6/22/99 | 6/22/97 |
| Leonardo Rosario | 6/17/99 | 6/17/97 |
| Jorge Amadiz | 6/28/99 | 6/28/97 |
| Santiago Estrella | 6/16/99 | 6/16/97 |
| Bolivar Rodriguez | 6/21/99 | 6/21/97 |

### C. Equitable Tolling

Although not requested by Plaintiffs' counsel, this Court must consider whether this action presents an appropriate case for equitable tolling of the statute of limitations. *See Partlow v. Jewish Orphans' Home of Southern Cal., Inc.,* 645 F.2d 757, 760 (9th Cir.1981) (implying doctrine of equitable tolling into FLSA).

Federal courts have applied the doctrine of equitable tolling in two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time. *Alvarez–Machain v. United States,* 107 F.3d 696, 701 (9th Cir.1996).

 Here, neither situation justifying equitable tolling applies. Las Vegas Cigar has not engaged in any wrongful conduct which prevented Plaintiffs from asserting their claims. Additionally, the ability to file consent forms was solely within Plaintiffs' control, and they have not demonstrated any extraordinary circumstances which prevented them from so filing. Plaintiffs' counsel did state, in Plaintiffs' Opposition to Defendant's Motion to Exclude Evidence at Trial and Award Attorney's Fees as a Sanction (# 21), that the Plaintiffs were scattered across the country, and that they spoke little English. However, these are not extraordinary circumstances outside of Plaintiffs' control. In fact, when asked to provide consent forms by counsel, eight out of eleven Plaintiffs responded. In a case of equitable tolling, "the negligence of the party invoking the doctrine can tip the balance against its application." *Graham v. City of Chicago,* 828 F.Supp. 576, 583 (N.D.Ill.1993). Plaintiffs have failed to follow the prescribed procedures in the statute, and have not offered any non-negligent explanation for their failure. *See Link v. Wabash Railroad,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."), *reh'g denied,* 371 U.S. 873, 83 S.Ct. 115, 9 L.Ed.2d 112 (1962); *Toth v. Trans World Airlines, Inc.,* 862 F.2d 1381, 1387 (9th Cir.1988). Refusing to apply the statute of limitations in this case because Plaintiffs should not be penalized for the omissions of their own lawyer "would be visiting the sins of [Plaintiffs'] lawyer upon the defendant." *Link,* 370 U.S. at 634 n. 10, 82

S.Ct. 1386. Therefore, equitable tolling is not justified in this case.

### D. Willful Violations and the Statute of Limitations

Finally, the Court notes that § 255(a) further provides that a "cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a) (1999). Plaintiffs do not allege that Las Vegas Cigar acted willfully to violate the FLSA, nor have they argued that the three-year statute of limitations applies, despite the fact that the applicability of the statute of limitations may partially or completely bar their claims through the motion now before the Court.[7] *See Perella v. Colonial Transit, Inc.*, 148 F.R.D. 147, 149 n. 2 (W.D.Pa.1991).

IT IS THEREFORE ORDERED that Las Vegas Cigar's Motion for Summary Judgment (# 18) is GRANTED with respect to Plaintiffs Gilberto Rodriguez and Pedro Rosaria.

IT IS FURTHER ORDERED that Las Vegas Cigar's Motion for Summary Judgment (# 18) is GRANTED with respect to Plaintiff Jose Luis Guareno. As set forth above, Plaintiff Guareno has leave to file a consent to suit form with this Court within ten (10) days of this Order to assert any alleged violations of the FLSA that may have occurred within two years of the date of filing of such consent.

IT IS FURTHER ORDERED that Las Vegas Cigar's Motion for Summary Judgment (# 18) is PARTIALLY GRANTED to the extent that Plaintiffs are barred from asserting any claims arising prior to the following dates, respectively: Ramon Bonilla, June 17, 1997; Sylvia Glez, June 23, 1997; Agapito Torres, June 25, 1997; Nelson Ventura, June 22, 1997; Leonardo Rosario, June 17, 1997; Jorge Amadiz, June 28, 1997; Santiago Estrella, June 16, 1997; and Bolivar Rodriguez, June 21, 1997.

---

7. In *Salazar v. Brown*, No. G87–961, 1996 WL 302673, at \*1 (W.D. Mich. April 9, 1996), the Magistrate Judge assumed a three year statute of limitations for purposes of summary judgment. There is some evidence in the Magistrate's opinion that willfulness was plead. *See id.* at \*1 (repeating the complaint's allegations that defendants " 'were adjusting the pay records so as to appear that plaintiffs were receiving minimum wage,' " and further alleging retaliatory acts for complaints that minimum wage was not being paid). Thus, it appears the Magistrate assumed the plaintiff could demonstrate willfulness, and applied a three year statute of limitations because, for purposes of summary judgment, all inferences must be made in favor of the nonmoving party. *See Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1050 (9th Cir.1995).