Deborah Mostella appeals from a final judgment dismissing her action against N N Motors[1] and Shane Nunn. The trial court dismissed the action with prejudice because it concluded that Mostella's claims were subject to arbitration. We reverse and remand.
In October 2000, Mostella visited N N Motors in Rainbow City to purchase a used vehicle. Shane Nunn, described by Mostella as a "salesperson and partner" at N N Motors, assisted Mostella in her purchase. Mostella ultimately decided to purchase a used 1989 Nissan Maxima automobile that Nunn showed her; she was using a 1987 Cadillac DeVille automobile that she owned as a trade-in. At the time of her purchase, the odometer on the Maxima showed that the car had been driven 108,000 miles. Mostella says that she told Nunn she needed a low-mileage vehicle, and she asked whether the odometer on the Maxima was accurate. She states that Nunn assured her that the mileage shown on the odometer was correct. Mostella purchased the Maxima for $5,995. She received $700 credit toward that purchase for the Cadillac and paid $1,000 in cash. She financed the remainder of the purchase price with N N Motors.
Among the sale documents relating to Mostella's purchase of the Maxima is a document entitled "Alternative Dispute Resolution Agreement By Binding Arbitration." The agreement states: *Page 879 
 "In connection with the Customer(s) [sic] acquisition of the above described motor vehicle on or about the day and date shown above, the Customer(s) and the Dealer mutually covenant, stipulate and agree, in connection with the resolution of any dispute arising out of the contract(s) entered into by the parties of and concerning the within described motor vehicle as follows: That the vehicle described within was manufactured outside of Alabama; has operated and will continue to operate on interstate highways; and has been traveling in interstate commerce; the manufacture, transportation, sale and use thereof has been and will continue to be regulated by the laws of the United States of America; and, that the contract(s) entered into by the parties concerning said motor vehicle evidence transactions involving and affecting commerce. The undersigned agree that all disputes not barred by applicable statutes of limitations or otherwise barred by law, resulting from or arising out of the sale transaction entered into, (including but not limited to: the terms of this agreement and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties concerning any goods or services acquired by the purchaser(s); the condition of the motor vehicle; the conformity of the motor vehicle sold to the contract of sale; the representations, promises, undertakings, warranties or covenants made by Dealer in connection with the sale of the motor vehicle, or otherwise dealing with the motor vehicle; the terms of financing in connection therewith; any terms or provisions of any credit life and/or disability insurance purchased simultaneously herewith, or any terms or provisions of any extended service contract purchased simultaneously herewith); that Dealer and the purchaser(s) agree to submit such dispute(s) to BINDING ARBITRATION, pursuant to the Arbitration Association then existing in the County where the dealer maintains its principal place of business, except as follows: (1) The arbitrators impaneled to arbitrate this matter shall be selected by the parties to this agreement as follows — The Dealer shall select one arbitrator. The Customer(s) shall collectively select one arbitrator. The two arbitrators so selected shall select a third arbitrator, who shall be a certified A.S.E. Master Mechanic; (2) The prepaid arbitration filing fees and all other prepaid costs of the arbitration proceeding shall be paid by the party seeking affirmative relief. THIS ARBITRATION SHALL BE IN LIEU OF ANY CIVIL LITIGATION IN ANY COURT, AND IN LIEU OF ANY TRIAL BY JURY."
(Capitalization in original.)
Shortly after purchasing the Maxima, Mostella took it to an Express Oil Change franchise in Gadsden. She discovered that the previous owner of the Maxima had brought it to that Express Oil Change location for servicing in July and in August 2000, and that the mileage noted on those occasions was 172,578 and 177,148 miles, respectively. Mostella then sued N N Motors and Nunn, alleging fraudulent misrepresentation and fraudulent suppression concerning the actual mileage of the vehicle.
N N Motors and Nunn filed a motion to dismiss the action on the sole ground that, based on the arbitration agreement, Mostella's claims should be submitted to binding arbitration. Other than the arbitration agreement, they submitted no evidence in support of their motion. Mostella opposed the motion to dismiss, arguing that her purchase of the Maxima did not substantially affect interstate commerce *Page 880 
and that the arbitration clause was unconscionable. She submitted her affidavit and other evidence in opposition to the motion to dismiss. The trial court held a hearing on the motion to dismiss; both Nunn and Mostella testified at the hearing. Nunn testified that the Maxima had been manufactured in Japan, but that N N Motors had acquired it from an Alabama resident as a trade-in vehicle. Nunn also testified that N N Motors sold the Cadillac automobile Mostella had traded in at an auction held in Attalla, but he did not know who purchased the Cadillac. Mostella testified that she resides in Ashville, that after she purchased the Maxima she made one trip to Mississippi in it, and that she has driven it several times on Interstate Highway 65 ("I-65") within Alabama. She also testified that she can no longer drive the Maxima because of mechanical problems that have developed, but that she continues to make monthly payments to N N Motors at its Gadsden location.
We first address the procedural posture of this appeal. Effective October 1, 2001, Rule 4(d), Ala.R.App.P., provides:
 "An order granting or denying a motion to compel arbitration is appealable as a matter of right, and any appeal from such an order must be taken within 42 days (6 weeks) of the date of the entry of the order, or within the time allowed by an extension pursuant to Rule 77(d), Alabama Rules of Civil Procedure."
This appeal was filed on October 3, 2001. Under the circumstances in this case, Mostella's appeal would have been appropriate even before Rule 4(d) was amended because the trial court dismissed her complaint with prejudice. When a trial court enters an order compelling arbitration, a stay of the proceedings in the trial court during the pendency of the arbitration protects the plaintiff from facing the prospect of the expiration of an applicable statute of limitations or from paying another filing fee in the event future legal proceedings become necessary. An order compelling arbitration should not constitute an adjudication on the merits; therefore, a trial court should not dismiss with prejudice a case in which arbitration is ordered.
The Federal Arbitration Act, 9 U.S.C. § 1 et seq., provides:
 "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2. A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110
(Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract requiring arbitration and proving that that contract involves a transaction that substantially affects interstate commerce. Liberty Nat'l Life Ins. Co. v. Douglas, 826 So.2d 806
(Ala. 2002); Sisters of the Visitation v. Cochran Plastering Co.,775 So.2d 759 (Ala. 2000).
We have held that the purchase of a used motor vehicle is not per se a transaction involving interstate commerce. Southern United Fire Ins. Co.v. Knight, 736 So.2d 582 (Ala. 1999). The arbitration agreement contains the following statement:
 "[The parties agree] [t]hat the vehicle described within was manufactured outside of Alabama; has operated and will continue to operate on interstate highways; and has been traveling in interstate commerce; the manufacture, transportation, sale and use thereof has been and will continue to be regulated by the laws of the United States of *Page 881 
America; and, that the contract(s) entered into by the parties concerning said motor vehicle evidence transactions involving and affecting commerce."
However, such a recital, without more, does not satisfy the requirement of showing that the transaction has a substantial effect on interstate commerce. See Aronov Realty Brokerage, Inc. v. Morris, 838 So.2d 348
(Ala. 2002), where this Court held:
 "Nor does the fact that the agreement stated that `the property sold has been involved in, and necessarily involves, interstate commerce' determine whether the transaction in fact did substantially affect interstate commerce. See Rogers Foundation Repair, Inc. v. Powell, 748 So.2d 869, 872 (Ala. 1999) (stating that a similar recitation `[did] not prove that the acknowledged involvement of or effect on interstate commerce [was] substantial')."
838 So.2d at 359. Therefore, in order to satisfy their burden of proof, N N Motors and Nunn must have introduced evidence proving that Mostella's purchase of the Maxima involved a transaction that substantially affected interstate commerce.
N N Motors and Nunn rely upon Nunn's testimony that the Maxima automobile was manufactured in Japan and that the Cadillac automobile Mostella traded in was sold at an auction held in Alabama but attended by automobile dealers from other states, and on Mostella's testimony that she traveled to Mississippi in the Maxima one time and that she drove the Maxima on several occasions within Alabama on I-65. In response, Mostella introduced evidence indicating that the Maxima was traded in at an Alabama location of N N Motors by an Alabama resident; that it was sold in Alabama to Mostella, who is an Alabama resident; and that it was financed by N N Motors, which is located in Alabama.
We conclude that N N Motors and Nunn have not met their burden. We have previously held that the sale by an Alabama automobile dealership of a used motor vehicle to an Alabama resident with financing by an Alabama entity was not a transaction that had a substantial effect upon interstate commerce. Tefco Fin. Co. v. Green, 793 So.2d 755 (Ala. 2001). In Tefco, we noted that there was no evidence indicating that the motor vehicle in that case had been driven outside of Alabama. Here, even though Mostella made one trip to Mississippi and drove the vehicle several times within Alabama on I-65, we conclude that those facts alone fall far short of proving that the transaction in this case was one that substantially affected interstate commerce. N N Motors and Nunn also point to the sale of Mostella's Cadillac at an auction attended by dealers from other states as evidence indicating that the transaction substantially affected interstate commerce. We need not decide whether that sale is relevant to whether Mostella's purchase of the Maxima substantially affected interstate commerce, because Nunn testified at the hearing that he did not know whether the Cadillac was purchased by an out-of-state dealer.
Because we hold that Mostella's purchase of the Maxima did not substantially affect interstate commerce, we need not address the parties' other arguments. The trial court erred in dismissing Mostella's complaint; therefore, we reverse the judgment and remand the case.
REVERSED AND REMANDED.
HOUSTON, SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., concurs in the result.
[1] We cannot determine the corporate status, if any, of N N Motors. It is not designated as either a corporation or a partnership on any of the sale documents included in the record, and none of the parties identifies its status. *Page 882