Wolff Motor Company, Pete Wolff III, and Joe Powell (hereinafter referred to collectively as "Wolff") appeal from the trial court's denial of their motion to compel arbitration of the claims filed against them by Stephen M. White and Linda K. White. The trial court denied Wolff's motion to compel arbitration on the ground that the Whites' purchase from Wolff of a vehicle used to transport automobiles did not substantially affect interstate commerce. We reverse and remand.
Wolff Motor Company buys vehicles in Florida, Alabama, Louisiana, Georgia, and Mississippi and resells them to buyers in Alabama and other surrounding states. Wolff has its principal place of business in Evergreen, Alabama. Wolff purchased a 1994 GMC 3500 Rollback tow truck ("the car-hauler") from Musick Enterprises d/b/a Suncoast Wholesale in Pensacola, Florida. Wolff used the car-hauler to haul cars in Florida, Mississippi, Georgia, and Alabama.
On October 27, 2000, Stephen White negotiated the purchase of the car-hauler from Wolff. Stephen White told Wolff that he operated a wrecker business in Flomaton, Alabama, and in Century, Florida, and that he intended to use the car-hauler to haul cars for his business.
Stephen White directed Wolff to complete the paperwork for the purchase of the car-hauler showing Stephen White *Page 1131 
and/or Linda White as the buyer. Wolff obtained the Whites' credit information from Equifax Credit Information Services in Atlanta, Georgia. Wolff attempted to obtain financing for the Whites through Firstar Bank, N.A., in Oshkosh, Wisconsin. Firstar declined to provide financing, but Wolff ultimately was able to secure a loan through the Escambia County Bank in Alabama by which the Whites could purchase the car-hauler. Wolff Motor Company and Stephen White executed an arbitration agreement in connection with the sale and purchase of the car-hauler.
On February 26, 2002, the Whites sued Wolff, alleging negligent, reckless, wanton, and/or intentional misrepresentation or suppression of material facts concerning the condition of the car-hauler at the time of the sale. The gravamen of the Whites' complaint is that the 1994 GMC 3500 Rollback tow truck they purchased from Wolff was manufactured and marketed as a commercial car-hauler but has proven unsuitable for that use; the Whites allege that they have been damaged because they have had to have the truck repaired, causing their business to lose money while the car-hauler was out of service during those repairs.[1] Wolff moved to compel arbitration of the Whites' claims against it. The trial court denied Wolff's motion, finding that its sale of the car-hauler to the Whites did not substantially affect interstate commerce. Wolff appeals.
"This Court reviews de novo a trial court's denial of a motion to compel arbitration." Homes of Legend, Inc. v. McCollough, 776 So.2d 741,745 (Ala. 2000). "A `party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract involves a transaction affecting interstate commerce.'" Tefco Fin. Co. v. Green, 793 So.2d 755, 758 (Ala. 2001) (quoting Ex parte Caver, 742 So.2d 168, 172 n. 4 (Ala. 1999)). The party moving for arbitration must "`produce some evidence which tends to establish its claim.'" Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260,1265 (Ala. 1995) (opinion on application for rehearing) (quoting In reAmerican Freight Sys., Inc., 164 B.R. 341, 345 (D.Kan. 1994)).
The parties agree that Stephen White signed an arbitration agreement when he purchased the car-hauler from Wolff Motor Company. Wolff argues that this transaction is governed by the Federal Arbitration Act,9 U.S.C. § 1 et seq. (the "FAA"), because, it argues, the car-hauler, by definition, is an instrumentality of interstate commerce and the sale of the car-hauler therefore affects interstate commerce. The Whites argue, however, that Wolff has not demonstrated that the sale of the car-hauler to the Whites affected interstate commerce.[2] The Whites also *Page 1132 
argue that even if the transaction affects interstate commerce, Mrs. White cannot be compelled to arbitrate her dispute with Wolff because she did not sign the arbitration agreement and she was not a party to the actual sale. Finally, the Whites argue that Joe Powell, an employee of Wolff Motor Company, may not compel the Whites to arbitrate their dispute with him concerning the car-hauler because he is not a party to the arbitration agreement.
Section 2 of FAA provides, in pertinent part:
 "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
Section 2 "has the effect of preempting conflicting Alabama law, in particular Ala. Code 1975, § 8-1-41(3), and thereby making enforceable a predispute arbitration agreement in a contract evidencing a transaction that involves interstate commerce." Homes of Legend, 776 So.2d at 745 (footnote omitted). See also Allied Bruce Terminix Cos. v. Dobson,513 U.S. 265, 279 (1995) (holding that the FAA controls in all cases in which the "`transaction' in fact involve[s] interstate commerce"). The FAA "provides for `the enforcement of arbitration agreements within the full reach of the Commerce Clause.'" Citizens Bank v. Alafabco, Inc.,539 U.S. 52, 56, 123 S.Ct. 2037, 2040 (2003) (quoting Perry v. Thomas,482 U.S. 483, 490 (1987)). It is well established that Congress can regulate three broad categories of activity pursuant to its commerce power: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce or persons or things in interstate commerce; and (3) those general activities having a substantial effect on interstate commerce. Selma Med. Ctr., Inc. v.Fontenot, 824 So.2d 668, 674 (Ala. 2001) (plurality opinion).[3] *Page 1133 
Wolff argues that the trial court erred when it relied on this Court's decision in Sisters of the Visitation v. Cochran Plastering Co.,775 So.2d 759 (Ala. 2000), to determine that the sale of the car-hauler to the Whites by Wolff Motor Company did not involve interstate commerce. Wolf argues that "the very nature of the vehicle which was purchased in this case invokes the application of the FAA to this transaction." We agree.
In Citizens Bank, the Supreme Court of the United States held thatSisters of the Visitation expressed an "improperly cramped view of Congress' Commerce Clause Power," that "appears to rest on a misreading of our decision in United States v. Lopez, 514 U.S. 549 (1995). Lopez did not restrict the reach of the FAA or implicitly overrule Allied-BruceTerminix Cos.[v. Dobson, 513 U.S. 265 (1995)]." 539 U.S. at 58,123 S.Ct. at 2041. In Citizens Bank, the Supreme Court of the United States rejected the test this Court adopted in Sisters of the Visitation — that the individual transaction at issue must itself have a "substantial effect" on interstate commerce in order to trigger the application of the FAA. The Supreme Court reaffirmed the rule that "Congress' Commerce Clause power `may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent `a general practice . . . subject to federal control.'" 539 U.S. at 56-57, 123 S.Ct. at 2040 (quotingMandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219,236 (1948)).
In Citizens Bank, Alafabco, a construction company, sued Citizens Bank alleging, among other causes of action, fraud and breach of fiduciary duty. Alafabco argued in its complaint that it "detrimentally '"incur[red] massive debt"' because [Citizens Bank] had unlawfully reneged on its agreement to provide capital sufficient to complete" one of Alafabco's construction projects. 539 U.S. at 54, 123 S.Ct. at 2039. Alafabco's loan agreement with Citizens Bank contained an arbitration clause. Citizens Bank moved to compel arbitration, but Alafabco argued that its transaction with Citizens Bank lacked a sufficient nexus with interstate commerce to establish the applicability of the FAA to the dispute. The United States Supreme Court held that the transaction at issue sufficiently "involved commerce" to trigger application of the FAA "for at least three reasons": (1) Alafabco engaged in business throughout the southeastern United States; (2) the transaction involved a business that purchased substantial quantities of goods that have moved in interstate commerce; and (3) the "general practice" of the transaction at issue was of the sort subject to Congress's Commerce Clause power.539 U.S. at 57-58, 123 S.Ct. at 2040-41.
For each of the three reasons stated in Alafabco, and for a fourth reason, the transaction in this case sufficiently "involves commerce" to fall within the scope of the FAA.[4] First, this case involves interstate commerce because both of the commercial enterprises in this case regularly deal in interstate commerce. Although the car-hauler at issue in this case was sold in Alabama by an Alabama resident to an Alabama resident, both Wolff Motor Company and the Whites regularly do business throughout the Southeast. Wolff Motor Company buys vehicles in Florida, Alabama, Louisiana, Georgia, and Mississippi, *Page 1134 
and the Whites conduct business in Alabama and Florida. In CitizensBank, the Supreme Court of the United States found that the transaction at issue there fell within the scope of the FAA because "Alafabco engaged in business throughout the southeastern United States." 539 U.S. at 57,123 S.Ct. at 2040.
Second, this transaction involves interstate commerce because Wolff Motor Company purchased substantial quantities of goods that have moved in interstate commerce. In this case, Wolff Motor Company engaged in interstate transactions in order to help the Whites finance their purchase of the car-hauler.[5] Wolff regularly purchases vehicles in interstate commerce. "[T]he Commerce Clause gives Congress the power to regulate local business establishments purchasing substantial quantities of goods that have moved in interstate commerce." Citizens Bank,539 U.S. at 57, 123 S.Ct. at 2040 (citing Katzenbach v. McClung, 379 U.S. 294,304-05 (1964)). The FAA certainly reaches transactions involving vehicles that have moved in interstate commerce and transactions that involve the purchase of goods that have moved in interstate commerce.
Third, this case involves commerce because the "general practice" of the transaction at issue was of the sort subject to Congress's Commerce Clause power. The Whites purchased the car-hauler from Wolff Motor Company for use in their wrecker business, which operates in both Alabama and Florida.[6] Pete Wolff III stated in his affidavit that he purchases vehicles for Wolff Motor Company in Florida, Alabama, Louisiana, Georgia, and Mississippi. He also stated that he has sold vehicles to people who live in states other than Alabama. The automobile business in the aggregate involves interstate commerce. See United Statesv. Evans, 272 F.3d 1069, 1080 (8th Cir. 2001) ("the transaction — the purchase of an automobile from a commercial used car dealer — is sufficient, by itself, to have an effect on interstate commerce").[7]
Moreover, the Whites *Page 1135 
operate a wrecker company, and in the aggregate the business of towing involves interstate commerce. See Gray v. Swanney-McDonald, Inc.,436 F.2d 652, 653 (9th Cir. 1971) (holding that the towing industry's cumulative effect on interstate commerce is substantial).[8]
Fourth and finally, as Wolff argues, a car-hauler is an instrumentality of commerce. "The automobile, if anything, is the paradigm of modern interstate commercial activity in the United States. . . . '[C]ars are themselves instrumentalities of commerce.'" United States v. McCoy,323 F.3d 1114, 1129 (9th Cir. 2003) (quoting United States v. Oliver,60 F.3d 547, 550 (9th Cir. 1995)). See also United States v. Ballinger,312 F.3d 1264, 1269 (11th Cir. 2002) ("The instrumentalities of interstate commerce are those 'persons or things' that move in interstate commerce, including all cars and trucks, ships, aircraft and anything else that travels across state lines, as do interstate shipments.");United States v. Turner, 301 F.3d 541, 543 (7th Cir. 2002) ("Instrumentalities, persons or things in interstate commerce, include railroads, aircraft, and trucks."); United States v. McHenry, 97 F.3d 125,126 (6th Cir. 1996) ("'cars are themselves instrumentalities of commerce'"); United States v. Bishop, 66 F.3d 569, 588-90 (3d Cir. 1995) ("[M]otor vehicles are `the quintessential instrumentalities of modern interstate commerce.' . . . Commuters, salespeople and haulers rely upon motor vehicles daily to maintain the flow of commerce . . . ."). Because Congress's Commerce Clause power reaches directly to the instrumentalities of commerce, a transaction involving the sale of an instrumentality of commerce — in this case a car-hauler — satisfies the FAA's "involving commerce" test.
For all these reasons, we agree with Wolff that the trial court erred when it denied the motion to compel arbitration.
The Whites have argued that even if Wolff is entitled to arbitrate this dispute, Linda White, as a nonsignatory to the arbitration agreement, cannot be forced to arbitrate her claims against Wolff. See Cook's PestControl, Inc. v. Boykin, 807 So.2d 524, 526-27 (Ala. 2001); Ex parte *Page 1136 Dickinson, 711 So.2d 984 (Ala. 1998); Tom Williams Motors, Inc. v.Thompson, 726 So.2d 607 (Ala. 1998). Wolff responds that Linda White cannot seek the benefits of the contract and at the same time avoid the agreement's arbitration provision. See Delta Constr. Corp. v. Gooden,714 So.2d 975, 981 (Ala. 1998). We agree with Wolff.
In Infiniti of Mobile, Inc. v. Office, 727 So.2d 42, 47-48 (Ala. 1999), this Court explained that a nonsignatory to an automobile purchase agreement cannot assert fraud and breach-of-warranty claims based on the agreement and at the same time choose to avoid the arbitration provision in the agreement.[9] Linda White's claims depend entirely on her status as a third-party beneficiary to her husband's contract with Wolff Motor Company; therefore, Wolff is entitled to compel her to arbitrate all of her claims that arise from the sale of the car-hauler.
Finally, the Whites argue that Joe Powell, an employee of Wolff Motor Company, may not compel them to arbitrate their claims against him because he did not sign the arbitration agreement.[10] See Jack IngramMotors, Inc. v. Ward, 768 So.2d 362 (Ala. 1999) (holding that an arbitration provision that limited its scope to the buyer/lessor and dealer was not broad enough to cover nonsignatory Primus Automotive Financial Services, Inc.). Wolff argues that Joe Powell is an employee of Wolf Motor Company; he is not an unrelated codefendant seeking to become a third-party beneficiary to the arbitration agreement. This Court has stated: "`A party should not be able to avoid an arbitration agreement merely by suing an employee of a principal.'" Stevens v. Phillips, [Ms.852 So.2d 123, 129 (Ala. 2002) (quoting Monsanto Co. v. Benton Farm,813 So.2d 867, 873-74 (Ala. 2001), quoting in turn Ex parte Gray,686 So.2d 250, 251 (Ala. 1996)). Therefore, because the Whites must arbitrate their claims against Wolff Motor Company and Pete Wolff III, they also must arbitrate their claims against Powell.
We reverse the trial court's order denying Wolff's motion to compel arbitration and remand for the trial court to enter an order staying the proceedings and compelling the Whites to arbitrate their dispute with Wolff Motor Company, Pete Wolff III, and Powell.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HOUSTON, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
LYONS, J., concurs in the result.
MOORE, C.J., and JOHNSTONE, J., dissent.
[1] The Whites stated in their complaint:
 "During the negotiations concerning the potential purchase of the foregoing vehicle, [Wolff was], at all times, possessed of full knowledge concerning the state of mechanical disrepair within which the vehicle existed, which caused the same to be unfit for the purposes for which it was manufactured and marketed.
". . . .
 "As a result of the purchase and ownership of the vehicle, the [Whites] have been damaged through the expenditure of significant repair bills and loss of income while the vehicle was forced to be taken out of service for major repairs."
[2] The Whites rely on the test this Court adopted in Sisters of theVisitation v. Cochran Plastering Co., 775 So.2d 759 (Ala. 2000). They argue that they are not required to arbitrate their dispute with Wolff because, they say, the transaction does not substantially affect interstate commerce. The Whites argue that Wolff Motor Company is an Alabama corporation, that all of the defendants are Alabama residents, that Wolff Motor Company does business in Alabama, that the Whites are residents of Alabama, that the Whites maintain a business office only in Alabama, that the car-hauler is titled in Alabama, that the contracts relating to the sale of the car-hauler were signed in Alabama, that the car-hauler was financed in Alabama, that no special tools were purchased for this transaction from out of state, that all the workers involved in the transaction are employed in Alabama, that none of the parties has affiliations with out-of-state entities that participated in this transaction, and that after he purchased the car-hauler Stephen White drove it to Flomaton, Alabama, without crossing any state lines.
[3] The United States Court of Appeals for the Sixth Circuit explained in United States v. McHenry, 97 F.3d 125, 126-27 (6th Cir. 1996):
 "In describing Congress's power over instrumentalities, `or persons or things in interstate commerce,' the Lopez Court [United States v. Lopez, 514 U.S. 549 (1995)] noted that regulation and protection are permissible `even though the threat may come only from intrastate activities.' 514 U.S. at [559], 115 S.Ct. at 1629. . . . Although it might seem anomalous for the Court to have allowed regulation of activities involving instrumentalities that, even in the aggregate, do not substantially affect interstate commerce, such a result is perfectly in keeping with the purposes underlying the Commerce Clause. Instrumentalities of interstate commerce — e.g., cars, trains, airplanes, see [United States v.] Bishop, 66 F.3d [569,] 588 [(3d Cir. 1995)] — retain the inherent potential to affect commerce, unlike other objects of regulation. Thus, even if a particular activity involving an instrumentality might not, through repetition elsewhere, substantially affect interstate commerce during the moment of regulation, the activity still falls within Category Two because the object of regulation contains the unique capacity to affect commerce at some future point in time."
[4] Each of these reasons, standing alone, is sufficient to demonstrate that the transaction involves interstate commerce and falls within the ambit of the FAA.
[5] Indeed, the car-hauler has itself moved in interstate commerce. Pete Wolff III, the owner of Wolff Motor Company, stated in his affidavit that he purchased the car-hauler from a company in Florida. He also stated that he obtained the Whites' credit information from Equifax Credit Information Services in Atlanta, Georgia, and that he initially tried to obtain financing for the Whites with Firstar Bank, N.A., in Oshkosh, Wisconsin.
[6] The Whites argue that for us to conclude that the Whites used the car-hauler in interstate commerce we must rely on the "contemplation of the parties" test the Whites say the United States Supreme Court rejected in Allied-Bruce Terminix Cos. v. Dobson. The Whites argue that Wolff relies on Stephen White's statement when he purchased the car-hauler that White intended to use the car-hauler to haul cars from Florida. It is not that statement on which this Court relies; the Whites have sued Wolff precisely because the commercial car-hauler they purchased from Wolff Motor Company was "unfit for the purposes for which it was manufactured and marketed" (Complaint ¶ 6) and the Whites seek damages because as a result they were unable to engage in commerce with the commercial car-hauler. Such an inability to engage in interstate commerce is itself an effect on interstate commerce. See, e.g., United States v. King,276 F.3d 109, 112 (2d Cir. 2002) (holding that Congress may regulate conduct that obstructs interstate commerce); United States v. Wiseman,172 F.3d 1196, 1214 (10th Cir. 1999) (observing that 18 U.S.C. § 1951(a), a part of the Hobbs Act, punishes anyone who in any way obstructs, delays, or effects commerce, and that Congress's ability to prevent the obstruction of commerce is an exercise of its Commerce Clause power).
[7] Relying on the holding in Mostella v. N N Motors, Inc.,840 So.2d 877 (Ala. 2002), that the sale of a used car was not per se a transaction that substantially affects interstate commerce, the Whites argue that this transaction does not involve interstate commerce.Mostella held that the facts presented by N N Motors fell "short of proving that the transaction in this case was one that substantially affected interstate commerce." 840 So.2d at 881. Mostella applied theSisters of the Visitation test for determining whether the transaction involved interstate commerce, 840 So.2d at 880, and thus is no longer good law.
Wolff also concedes that in Tefco, 793 So.2d at 759-60, and KeelMotors, Inc. v. Tolbert, 821 So.2d 963, 964-65 (Ala. 2001), this Court held that the sale of a used car for personal, local use did not substantially affect interstate commerce. Both Tefco, 793 So.2d at 759, and Keel, 821 So.2d at 964 (citing Tefco), conflict with Citizens Bank,539 U.S. at 57-58, 123 S.Ct. at 2040-41, and, therefore, are no longer good law.
[8] In Gray v. Swanney-McDonald, Inc., 436 F.2d at 653, the United States Court of Appeals for the Ninth Circuit held:
 "The provision of towing and road services for the national highway system is essential to the free flow of traffic on that system. The fact that such services are a small part of appellee's business renders them no less important to interstate commerce. Even if appellee's contribution to interstate commerce was, by itself, quite small, we cannot ignore the cumulative effect that the many small companies in appellee's position have upon commerce between the states. By regularly servicing vehicles on the Interstate and U.S. Highways, appellee has become part of an industry the cumulative effect of which upon interstate commerce is substantial. . . . The fact that any given, or every given, company's contacts with interstate commerce are extremely small is irrelevant."
[9] Linda White asserts claims of suppression and misrepresentation.
[10] The Whites make no similar argument in regard to Pete Wolff III because he is a signatory to the arbitration agreement.