Edward D. Jones Co., LP, d/b/a Edward Jones, a Missouri corporation, and its agent, Frank Preziuso, appeal from the trial court's denial of their motion to compel arbitration of the claims filed against *Page 834 
them by John Herbert Wehby, individually, and on behalf of a partnership, J J Com. The trial court denied the motion to compel arbitration on the ground that the transaction that formed the basis of the claim did not substantially affect interstate commerce. We reverse and remand.
 I.
Wehby sued Jefferson Bruce McKittrick, his former business partner, alleging fraud and breach of contract. Wehby later amended his complaint to include claims of breach of fiduciary duty and suppression against Edward D. Jones Co., LP, d/b/a Edward Jones, and its agent, Frank Preziuso (hereinafter collectively "Jones"). In March 2000, Wehby and McKittrick formed a general partnership, J J Com, to manage specific investment accounts located at AmSouth Bank in Jefferson County, Alabama, and at Edward D. Jones Co. in Cleveland, Ohio. Wehby's complaint alleges that McKittrick engaged in trading not authorized under the partnership agreement, resulting in losses to the partnership of approximately $385,000. Wehby sought $500,000 in compensatory, consequential, and incidental damages, as well as costs, attorney fees, and interest on the debt. McKittrick failed to answer Wehby's complaint, and the trial court entered a default judgment against McKittrick in the amount of $500,000.[1]
Edward D. Jones Co. and J J Com had previously entered into a customer account agreement that addressed the partnership account the parties maintained with Edward D. Jones Co. This agreement contained the following arbitration provision:
"Arbitration
"1. Arbitration is final and binding on the parties.
 "2. The parties are waiving their right to seek remedies in court, including the right to a jury trial.
 "3. Pre-arbitration discovery is generally more limited than and different from court proceedings.
 "4. The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.
 "5. The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
 "I agree that this Agreement shall be governed by the laws of the State of Missouri without giving effect to the choice of law or conflict of laws provisions thereof. Any controversy arising out of or relating to any of my accounts or transactions with you, your officers, directors, agents and/or employees for me, or to this agreement, or the breach thereof, or relating to transactions or accounts maintained by me with any of your predecessor or successor firms by merger, acquisition or other business combinations from the inception of such accounts shall be settled by arbitration in accordance with the rules then in effect of the Boards of Directors of the New York Stock Exchange, Inc., the American Stock Exchange, Inc., the Municipal Securities Rulemaking Board, or the National Association of Securities Dealers, Inc. as I may elect. If I do not make such elections by registered mail addressed to you at your main office within five (5) days after demand by you that I make such an election, then you will have the right to elect the arbitration *Page 835 
tribunal of your choice. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof."
Jones moved the court to dismiss the action by Wehby and the partnership and to compel arbitration. The trial court denied Jones's motions to dismiss and to compel arbitration. Jones appealed.
 II.
Review of a trial court's denial of a motion to compel arbitration is properly sought through a direct appeal. Rule 4(d), Ala. R.App. P.; A.G. Edwards Sons, Inc. v. Clark,558 So.2d 358, 360 (Ala. 1990). The standard of review for a ruling on a motion to compel arbitration is as follows:
 "`"This Court reviews de novo the [grant or] denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that [the] contract evidences a transaction affecting interstate commerce. Id.
`[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.' Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing)."
 "`Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (emphasis omitted).'"
Parkway Dodge, Inc. v. Hawkins, 854 So.2d 1129, 1132 (Ala. 2003) (quoting Lewis v. Conseco Fin. Corp., 848 So.2d 920, 922
(Ala. 2002)).
 III.
Jones argues that it met its "burden of proving the existence of a contract calling for arbitration" and "proving that that contract evidences a transaction affecting interstate commerce."TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The customer account agreement contains a binding provision to arbitrate.[2] Therefore, we need address only whether this transaction involves interstate commerce within the meaning of the *Page 836 
Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"),[3] which states, in pertinent part, that:
 "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2 (emphasis added).
Under the FAA, the enforcement of arbitration agreements is "`within the full reach of the Commerce Clause.'" Citizens Bankv. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 2040,156 L.Ed.2d 46 (2003) (quoting Perry v. Thomas, 482 U.S. 483, 490,107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). "[T]he FAA encompasses a wider range of transactions than those actually `in commerce' — that is, `within the flow of interstate commerce.'" Id.
(quoting Allied Bruce Terminix Cos. v. Dobson, 513 U.S. 265,273, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)).
In Citizens Bank, the Supreme Court of the United States rejected a restrictive view of Congress's Commerce Clause power, stating that "Congress' Commerce Clause power `may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent `a general practice . . . subject to federal control.'" Citizens Bank, 539 U.S. at 56-57,123 S.Ct. at 2040 (quoting Mandeville Island Farms, Inc. v. AmericanCrystal Sugar Co., 334 U.S. 219, 236, 68 S.Ct. 996,92 L.Ed. 1328 (1948)). Thus, the applicable test is whether the transaction in issue "involved commerce" and therefore "trigger [ed] application of the FAA." Wolff Motor Co. v. White,869 So.2d 1129 (Ala. 2003).
Citizens Bank concerned commercial loans between Citizens Bank and Alafabco, an Alabama construction company. Citizens Bank moved to compel arbitration of a dispute regarding the loans. The transaction underlying the dispute involved interstate commerce "for at least three reasons": (1) Alafabco engaged in business throughout the southeastern United States; (2) the debt was secured by Alafabco's business assets, which involved substantial quantities of goods that had moved in interstate commerce; and (3) the "general practice" represented by the transaction was of a type subject to Congress's Commerce Clause power. See CitizensBank, 539 U.S. at 56-57, 123 S.Ct. at 2040-41.[4] *Page 837 
The transaction at issue in this case between Jones and Wehby involves interstate commerce for at least two of the reasons recited by the Supreme Court of the United States in CitizensBank and, thus, falls within the scope of the FAA.[5]
First, the relationship between J J Com and Jones involved interstate commerce because J J Com operated investment accounts at AmSouth Bank in Jefferson County, Alabama, and at Edward D. Jones Co. in Cleveland, Ohio. The transactions involved residents of both Alabama and Ohio; and Edward D. Jones Co. is incorporated in Missouri. In Citizens Bank andWolff, the transactions were found to involve interstate commerce based upon the fact that the parties engaged in business in other states. See Citizens Bank, 539 U.S. at 56,123 S.Ct. at 2040; Wolff, supra.
Second, this case involves interstate commerce because the "general practice" of the transaction is of the type subject to Congress's Commerce Clause power. Investing and trading in securities profoundly impact our national economy. Congress may regulate these activities pursuant to its Commerce Clause power.See Investment Advisors Act of 1940, § 201, 54 Stat. 847,15 U.S.C. § 80b-1 (finding that investment advisory activities affect interstate commerce); North American Co. v. Securities Exch. Comm'n, 327 U.S. 686, 704, 66 S.Ct. 785, 90 L.Ed. 945
(1946) ("Congress must be able to act in terms of economic and financial realities. The commerce clause gives it authority so to act.").
 IV.
Jones has met its burden in support of its motion to compel arbitration; therefore, the trial court erred in denying Jones's motion to compel arbitration. We reverse its order and remand the cause.
REVERSED AND REMANDED.
HOUSTON, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs in the rationale in part and concurs in the judgment.
[1] Apparently, McKittrick did not appeal this default judgment.
[2] Wehby argues that he did not authorize his signature on the customer account agreement or on the partnership account form. However, it is undisputed that J J Com is a general partnership and that the account with Edward D. Jones Co. was the property of the partnership. Thus, the signature of one general partner is sufficient to bind the partnership. Section 10-8A-301(1), Ala. Code 1975, provides:
 "Each partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the partnership name, for apparently carrying on in the ordinary course the partnership business . . . binds the partnership, unless the partner had no authority to act for the partnership in the particular matter and the person with whom the partner was dealing knew or had received a notification that the partner lacked authority."
McKittrick signed the customer account agreement and the partnership account form with Edward D. Jones Co.; in doing so he bound the partnership to arbitrate "[a]ny controversy arising out of or relating to" the partnership account. There is no evidence to suggest that McKittrick's authority was restricted so that his signature on those documents would not bind the partnership. Because Wehby has not put forth evidence to the contrary, the partnership is bound by McKittrick's signature on the customer account agreement, which contains the arbitration provision.
[3] The FAA is a proper exercise of Congress's Commerce Clause power. See Southland Corp. v. Keating, 465 U.S. 1, 11,104 S.Ct. 852, 79 L.Ed.2d 1 (1984) ("The Federal Arbitration Act rests on the authority of Congress to enact substantive rules under the Commerce Clause.").
[4] Subsequently, this Court applied Citizens Bank in WolffMotor Co. In Wolff, the buyer of a car-hauling tow truck sued the seller of the vehicle, Wolff Motor Co., alleging misrepresentation and suppression of material facts concerning the condition of the car-hauler at the time of the sale. This Court held that the trial court erred in denying Wolff Motor Co.'s motion to compel arbitration because the transaction involved commerce, which triggered the application of the FAA.
In Wolff, this Court held that interstate commerce was involved for the three reasons cited in Citizens Bank and for an additional reason. Wolff involved interstate commerce because (1) "both of the commercial enterprises in the case regularly deal[t] in interstate commerce"; (2) Wolff Motor "purchased substantial quantities of goods that [had] moved in interstate commerce"; (3) the "`general practice' of the transaction at issue was of the sort subject to Congress's Commerce Clause power"; and (4) a "car-hauler is an instrumentality of commerce." Wolff Motors, 869 So.2d at 1135.
[5] We note that to support a finding that the transaction involves interstate commerce it is sufficient if the transaction involves interstate commerce in any one of the ways described by the Supreme Court of United States in Citizens Bank,539 U.S. at 56-57, 123 S.Ct. at 2040-41.