MAIN, Justice.
Alabama Title Loans, Inc., Accurate Adjustments, LLC, and Kevin Scott Sanders, defendants in an action pending in the Mobile Circuit Court (sometimes referred to collectively as “the title-loan parties”), appeal from the trial court’s order denying their motions to compel arbitration of claims filed against them by the plaintiff, Kimberly C. White. We reverse and remand with directions.
I. Factual Background and Procedural History
On May 29, 2009, White borrowed $1,700 from Alabama Title Loans, securing the loan with a security interest in her automobile, a 2006 Nissan Sentra.[1] Alabama Title Loans required White to surrender to it the original certifícate of title to the Nissan and a key to the Nissan and to sign a title-loan agreement. The title-loan agreement contained an arbitration clause that stated, in pertinent part:
“14. ARBITRATION PROVISION: The Arbitration provision describes when and how a Claim (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. It can be a quicker and simpler way to resolve disputes. As solely used in the Arbitration Provision, the terms ‘we’, ‘us’ and ‘our’ mean the Pawnbroker (listed on the top of the first page of this Agreement), its parent companies, wholly or majority owned subsidiaries, affiliates, successors, assigns and any of their employees, officers and directors, and ‘you’ means Pledgor (listed on the top of the first page of the Agreement). These terms for the purposes of this Arbitration Provision also mean any third party providing any goods and services in connection with the origination, servicing and collection of this Agreement if such third party is named as a party by you in any lawsuit between you and us.
[[Image here]]
“(b) What Claims Are Covered: ‘Claim’ means any claim, dispute, or controversy between you and us that in any *889 way arises from or relates to this Agreement or the Vehicle (excluding either party’s right to file and maintain a claim in an appropriate small claims court) securing this Agreement. ‘Claim’ has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). Subject to paragraph (f) below, it also includes disputes about the validity, enforceability, arbi-trability or scope of this Arbitration Provision or this Agreement. However, ‘Claim’ does not include (i) our right to enforce our security interest and to obtain possession of the Collateral by seeking a replevin judgment or by using self-help, provided such action seeks only possession of the Collateral and not a personal monetary judgment against you, or (ii) any individual action in court by one party that is limited to preventing the other party from using a self-help remedy and that does not involve a request for damages or monetary relief of any kind. But if that Claim is transferred, removed or appealed to a different court, we then have the right to choose arbitration. The parties agree that this Arbitration Agreement is not applicable to ‘small claims’ meaning those claims that either party is entitled to file and maintain in an appropriate small claims court, or your State’s equivalent. However, if that small claim is transferred, removed or appealed to a different court, we then have the right to choose arbitration.
[[Image here]]
“(1) Rules of Interpretation: This Arbitration Provision shall survive the repayment of all amounts oived under this Agreement, any legal proceeding, or any use of a self-help remedy by us to collect a debt owed by you to us.... ”
(Emphasis added.)
On June 30, White paid the interest of $425 plus a late fee of $23.33 on the May loan and signed a new title-loan agreement for $1,698.33, the balance of the principal remaining on her May loan. The June title-loan agreement contained an arbitration clause identical to the one in the title-loan agreement White signed in May. On July 30, White made another interest payment of $425 and signed a new title-loan agreement for $1,697.91, the balance of the principal remaining on her June loan. The July title-loan agreement contained an arbitration clause identical to the arbitration clauses in the title-loan agreements White signed in May and June.
On August 17, 2009, White says she went to Alabama Title Loan’s office and told the employee behind the counter that she was ready to pay her loan in full. The employee told her that she would begin to prepare the paperwork, White says, and also told her to come back later in the day to pick up her original certificate of title and the key to her automobile. All the title-loan agreements White signed included the following provision: “Upon payment in full of this obligation, Pawnbroker will release any recorded lien and return the Certificate of Title to Pledgor.” White states that when she returned she paid her loan in full, using cash, and the employee returned the key and the certificate of title to the Nissan. White says that, when the certificate of title was returned to her, it reflected a discharge of the lien Alabama Title Loans had placed on her Nissan. White insists that she never returned to Alabama Title Loans.
On October 12, 2009, White borrowed $3,627.48 from Harrison Finance Compa *890 ny, a company that is not affiliated with Alabama Title Loans. White secured this loan by providing Harrison Finance with a security interest in her 2006 Nissan Sentra automobile. Harrison Finance obtained a lien on the Nissan and, White says, took possession of her original certifícate of title.
At some time before January 10, 2010, Alabama Title Loans contracted with Accurate Adjustments to conduct a “self-help” repossession of White’s Nissan. On January 10, White says, she happened to look out the window of her house and saw a man in her driveway preparing to attach her Nissan to a tow truck. The man was later identified as Sanders. White says she approached the passenger side of the tow truck, where an unidentified man was sitting. White states that she produced paperwork to show that her automobile title was currently being held not by Alabama Title Loans, but by Harrison Finance to secure her October 2009 loan. White says that, while she was still standing beside the open passenger-side door of the truck explaining her paperwork to the unidentified man on the passenger side, Sanders returned to the driver’s seat of the truck, put the truck in gear, and pressed the accelerator. According to White, she grabbed the passenger-side door in an effort to prevent the truck from running over her, and when she did the man in the passenger seat pulled her into the truck and physically forced her into the backseat. Sanders drove the truck to the repossession lot used by Alabama Title Loans. White says that during the trip to the repossession lot Sanders threatened her. The police were called to the lot, and, according to White, the police required Sanders to release the Nissan to her when Alabama Title Loans failed to produce the title it claimed gave it the right to repossess the Nissan.
White sued the title-loan parties, alleging assault and battery, negligence, wantonness, trespass, wrongful repossession, and conversion and alleging that Alabama Title Loans and Accurate Adjustments were vicariously liable for Sanders’s conduct. The title-loan parties filed motions to compel arbitration in which they argued that the trial court should compel White to arbitrate her claims based upon a title-loan agreement with Alabama Title Loans dated September 30, 2009, and purportedly signed by White. The September title-loan agreement contained an arbitration clause identical to the ones in the title-loan agreements White had signed in May, June, and July. The title-loan parties submitted the September 30 title-loan agreement purportedly signed by White in support of their motions to compel arbitration.[2]
White opposed the title-loan parties’ motions to compel arbitration, contending that she did not execute a title-loan agreement with Alabama Title Loans in September 2009 and that the signature on the document produced by the title-loan parties was not her signature. In support of her opposition, she attached her affidavit, in which she testified that she did not execute a title-loan agreement on September 30, denied that the signature on the document relied on by the title-loan parties was hers, and described in detail the procedure she had followed in repaying her *891 loan on August 17, 2009, and the circumstances surrounding her loan from Harrison Finance on October 12, 2009. White also attached a photocopy of her certifícate of title bearing a signature discharging the lien of Alabama Title Loans dated August 17, 2009. Finally, White attached an affidavit from Karen McGrew, the local branch manager of Harrison Finance, who testified that as of July 1, 2010, the date on which she executed her affidavit, Harrison Finance possessed the original certificate of title to White’s Nissan and that the title had been in the possession of Harrison Finance since October 12, 2009. McGrew also testified that Harrison Finance never would have agreed to loan funds to White if it had not been able to secure a lien on her Nissan and White had not been able to provide Harrison Finance the original certificate of title.
On the day before the hearing on the motions to compel arbitration, Alabama Title Loans filed a reply to White’s opposition to arbitration, along with documents not produced earlier. Those documents included the title-loan agreements White admits she signed in April, May, June, and July, documents purporting to be title-loan agreements signed by White in August and September, and payment receipts from May through September, all purportedly signed by White.[3] Alabama Title Loans argued that it was entitled to demand arbitration of White’s claims based upon any of the title-loan agreements she had signed, not based only on the document dated September 30, 2009. Accurate Adjustments and Sanders joined in Alabama Title Loan’s reply. White says that because the reply was filed in the afternoon before the day the hearing on the motions to compel arbitration was scheduled, she filed her evidence in opposition in open court at the hearing. White submitted at the hearing a photograph of the door of Alabama Title Loan’s office showing its business hours and a photocopy of a record from the probate court reflecting that Harrison Finance Company held the only lien on her Nissan. After hearing argument from the parties and reviewing their supporting documentation, the trial court denied the title-loan parties’ motions to compel arbitration without making any findings of fact.
II. Standard of Review
This Court’s standard of review on an appeal from a trial court’s order granting or denying a motion to compel arbitration is well settled. Bowen v. Security Pest Control, Inc., 879 So.2d 1139, 1141 (Ala.2003). A direct appeal is the proper procedure by which to seek review of such an order, Rule 4(d), Ala. R.App. P., and this Court will review de novo the trial court’s grant or denial of a motion to compel arbitration. Bowen, 879 So.2d at 1141. The party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction involving interstate commerce. Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So.2d 1129, 1132 (Ala.2003). The party seeking to compel arbitration must present some evidence tending to establish its claim. Wolff Motor Co. v. White, 869 So.2d 1129, 1131 (Ala.2003). Once the moving party meets that initial burden, the party opposing arbitration has the burden of presenting evidence tending to show that the arbitration agreement is invalid or that it does not apply to the dispute in question. Bowen, 879 So.2d at 1141. See also Title Max of Birmingham, Inc. v. *892 Edwards, 973 So.2d 1050, 1052-53 (Ala. 2007).
III. Analysis
This case is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (“the FAA”). Section 2 of the FAA provides, in pertinent part:
“A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.”
“The FAA ‘provides for “the enforcement of arbitration agreements within the full reach of the Commerce Clause.” ’ ” Wolff Motor Co., 869 So.2d at 1132 (quoting Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003), quoting in turn Perry v. Thomas, 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)).
The title-loan parties had the initial burden of producing evidence tending to show that a contract providing for arbitration exists and that the underlying transaction involved interstate commerce. Title Max, 973 So.2d at 1053. White does not dispute that the title-loan agreement involved interstate commerce (see supra note 2). In support of their initial motions to compel arbitration, the title-loan parties produced the September 30, 2009, title-loan agreement they claim White signed, along with evidence indicating that the transaction involved interstate commerce. Once the title-loan parties met their initial burden, White had the burden of presenting evidence tending to show that the title-loan agreement containing the arbitration clause was invalid or that it did not apply to this dispute. Id. White emphatically denied that she executed a title-loan agreement with Alabama Title Loans in September 2009, and she asserted that the signature on the document produced by the title-loan parties was forged. She offered affidavit testimony that she paid her loan in full in August 2009 and that she later obtained a loan from Harrison Finance that required that she surrender her original certificate of title and that any prior liens on her automobile must have been discharged for Harrison Finance to make the loan. After White argued that the September title-loan agreement was a forgery, the title-loan parties produced other title-loan agreements and payment receipts purportedly signed by White on which they attempt to rely. White insists that she did not sign any title-loan agreements after July 2009, that she repaid her loan in full in August 2009, and that she did not sign any payment receipts after August 17, 2009.
The title-loan parties contend that the repossession of White’s Nissan was a result of the relationship between Alabama Title Loans and White that was established through the various title-loan agreements executed by White from May through September, without which, they say, there never would have been a repossession. They maintain that each title-loan agreement from May through September contains a valid arbitration clause and that White does not dispute that she executed the agreements dated May, June, and July. Therefore, the title-loan parties argue, even if White repaid her loan on August 17, she still should be compelled to arbitrate her claims pursuant to the arbitration clause in the May, June, or July title-loan agreement because the subsequent repossession is a result of the relationship between the parties established by the various title-loan agreements and relates back to each title-loan agreement and transaction to which White and Ala *893 bama Title Loans were parties. The title-loan parties argue that they are entitled to enforce the arbitration clause contained in any of the agreements White admits to having signed.[4] White argues that she cannot be compelled to arbitrate her claims pursuant to the arbitration clause contained in the May, June, or July title-loan agreement because, she argues, each of those contracts was extinguished when she either paid the interest and signed a new title-loan agreement for another month or paid the amount due on the loan in full. She contends that a general arbitration clause in an expired contract cannot be used to compel arbitration in a dispute that did not arise during the term of the contract or did not involve a right that accrued under the contract. She also argues that she cannot be compelled to arbitrate her claims pursuant to the September title-loan agreement because a trial court must first determine whether that agreement is a forgery or a valid contract.
The dispositive questions in this case are whether the arbitration clause in the May, June, or July title-loan agreement is valid and enforceable against WTiite, who admitted having signed each of those title-loan agreements, and, if so, whether the language of the arbitration clause is broad enough to encompass White’s claims against the title-loan parties. We answer both questions in the affirmative.
“Where contract terms are unambiguous, we do not look beyond the plain language of the contract to second-guess the intentions of the parties; nor will we speculate about what may have been the subjective expectations of the parties. See Harbison v. Strickland, 900 So.2d 385, 391 (Ala.2004) (‘ “[I]t is elementary that it is the terms of the written contract, not the mental operations of one of the parties, that control its interpretation.” ’ (quoting Kinmon v. J.P. King Auction Co., 290 Ala. 323, 325, 276 So.2d 569, 570 (1973))); Turner v. West Ridge Apartments, Inc., 893 So.2d 332, 335 (Ala.2004) (‘ “[A] court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state.’” (quoting Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36 (Ala.1998)))....”
Title Max, 973 So.2d at 1054-55 n. 1.
The arbitration clause provides that it “shall survive the repayment of all amounts owed under this Agreement,” thus evidencing the intent of the parties that any dispute that might arise between them should be arbitrated regardless of whether the amount borrowed pursuant to the title-loan agreement had been repaid. Therefore, the title-loan parties were entitled to seek to compel arbitration pursuant to any title-loan agreement White admitted signing, and we need not decide whether the August or September title-loan agreements presented by Alabama Title Loans were valid contracts.
“[The] language of the arbitration provision in this case is not ambiguous. Under the plain language of the provision, [the plaintiffs] agreed to arbitrate all disputes ‘arising from or relating to’ the contract. ‘This Court has held [that] where a contract signed by the parties contains a valid arbitration clause that applies to claims “arising out of or relat *894 ing to ” the contract, that clause has a broader application than an arbitration clause that refers only to claims “arising from” the agreement.’ ”
Green Tree Fin. Corp. of Alabama v. Vintson, 753 So.2d 497, 505 (Ala.1999) (quoting Reynolds & Reynolds Co. v. King Autos., Inc., 689 So.2d 1, 2-3 (Ala.1996)). The arbitration clause contained in each of the title-loan agreements White signed or that the title-loan parties say she signed defines the term “claim” not only as “any claim, dispute, or controversy between you and us that in any way arises from or relates to this Agreement ...,” but also as “any claim, dispute, or controversy between you and us that in any way arises from or relates to ... the Vehicle.” The broad language of the arbitration clause in this case makes no distinction between claims that arise from or relate to either the agreement or the vehicle; all such claims are included within the provision. Furthermore, “ ‘[t]he federal policy favoring arbitration is so strong that, as a matter of law, “any doubts concerning the scope of arbitrable issues should be resolved in. favor of arbitration.” ’ ” Parkway Dodge, Inc. v. Hawkins, 854 So.2d 1129, 1132 (Ala.2003) (quoting Ameriquest Mortgage Co. v. Bentley, 851 So.2d 458, 463 (Ala.2002), quoting in turn Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).
As this Court has recently stated:
“The freedom of parties to contract is an important public policy written into the state constitution and adopted by the people of Alabama. It is a significant liberty interest that is expressly protected in the constitution. This Court has recognized that ‘ “the state constitution protects contractual obligations from impairment by the legislature or the judiciary, and the right of freedom of contract is a cherished one that courts are bound to protect.” ’ Ex parte Life Ins. Co. of Georgia, 810 So.2d 744, 751 (Ala.2001) (quoting Sutton v. Epperson, 631 So.2d 832, 835 (Ala.1993)).
“ ‘Even under what may seem to be the most compelling circumstances, [courts] may not “refine away the terms of the contract that are expressed with sufficient clarity to convey the intent and meaning of the parties.” Kinnon v. Universal Underwriters Ins. Co., 418 So.2d [887,] 888 [ (Ala.1982) ]. “It is not a function of the courts to make new contracts for the parties, or raise doubts where none exist.” Commercial Union Ins. Co. v. Rose’s Stores, 411 So.2d 122, 124 (Ala.1982).’ ”
Title Max, 973 So.2d at 1055 n. 1 (quoting Johnson v. Cervera, 508 So.2d 257, 259 (Ala.1987)).
We conclude that White’s claims fall squarely within the purview of the broadly worded arbitration clause in the title-loan agreements executed by White and that the trial court erred when it denied the title-loan parties’ motions to compel arbitration of White’s claims against them. We therefore pretermit consideration of the other arguments raised by the parties.
IV. Conclusion
Based upon the broad language of the arbitration clause in the title-loan agreements executed by White, we hold that the trial court should have granted the title-loan parties’ motions to compel arbitration. We therefore reverse the trial court’s order denying those motions and remand the case for that court to enter an order granting the title-loan parties’ motions to compel arbitration.
1091642 — REVERSED AND REMANDED WITH DIRECTIONS.
*895 1091677 — REVERSED AND REMANDED WITH DIRECTIONS.
COBB, C.J., and WOODALL, STUART, BOLIN, PARKER, MURDOCK, SHAW, and WISE, JJ., concur.

. White had borrowed $500 from Alabama Title Loans on April 30, 2009, and had executed a title-loan agreement. It is undisputed that she paid both the interest and principal on the April loan in full before she entered into the loan arrangement on May 29 that began the series of events underlying these appeals.

. The title-loan parties also submitted in support of their motions to compel arbitration an affidavit from an officer of Alabama Title Loans detailing the ways in which the business activities of Alabama Title Loans affect interstate commerce. Because White does not argue that the transactions at issue in this case do not affect interstate commerce, it is unnecessary for this Court to discuss the effect of the transactions on interstate commerce.

. White contends' that the August title-loan agreement and the payment receipts dated August 31 and September 30 were forged. The title-loan parties dispute her contention as to these documents as well.

. We note that Accurate Adjustments and Sanders argue in their brief that, as nonsigna-tories to the title-loan agreements, they are nevertheless entitled to compel White to arbitrate her claims against them. White does not argue that Accurate Adjustments and Sanders are not entitled to compel arbitration pursuant to a valid agreement; therefore, we need not address this argument.