Rel: October 24, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

## SC-2024-0626

_____

## The Terminix International Co., L.P., Ken Stroh, and Faith Justice

## v.

## St. Paul's Episcopal Church

## Appeal from Mobile Circuit Court
## (CV-24-900310)

MENDHEIM, Justice.

The Terminix International Co., L.P. ("Terminix"), and Faith Justice, and Ken Stroh, who are agents of Terminix (collectively "the Terminix defendants"), appeal from the Mobile Circuit Court's order denying their motion to compel arbitration of all claims asserted against them by St. Paul's Episcopal Church ("St. Paul's") in a lawsuit commenced by St. Paul's against, among others, the Terminix defendants. We reverse and remand.

## I. Facts

St. Paul's owns real property located on Old Shell Road in Mobile on which it has several buildings. One of those buildings is a wood-framed historic chapel built over 150 years ago, which served as its original church building ("the chapel"). Another building is the "new" church building constructed in the 1960s and built with a brick veneer, an interior steel-framed structure, and a wood-framed roof structure and steeple above the sanctuary ("the church"). In 2006, St. Paul's began constructing what it refers to as its education building on the same property; the education building is separate from, and not connected to, the chapel or the church.

On August 1, 1982, St. Paul's entered into two contracts with Terminix for the prevention and control of termites in the chapel and the church. St. Paul's paid the initial contract fees and thereafter renewed those contracts by paying annual fees through February 5, 2024. Those two contracts did not contain arbitration provisions, and Terminix never updated those contracts to include new provisions.

On April 18, 2006, while the education building was being constructed, St. Paul's entered into a contract with Terminix for the prevention and control of termites in the education building. St. Paul's paid the initial contract fee for the 2006 contract, and thereafter it paid annual renewal fees for termite-prevention services with respect to the education building. The 2006 contract contained a mandatory arbitration provision that provided:

> "12. **MANDATORY ARBITRATION**. [St. Paul's] and Terminix agree that any claim, dispute or controversy ('Claim') between or against the other or the employees, agents or assigns of the other, and any Claim arising from or relating to this agreement or the relationships which result from this agreement, including but not limited to any tort or statutory Claim, shall be resolved by neutral binding arbitration by the National Arbitration Forum ('NAF'), under the Code of Procedure ('Code') of the NAF in effect at the time the Claim is filed. … Neither party shall sue the other party with respect to any matter in dispute between the parties

3

other than for enforcement of this arbitration agreement or of the arbitrator's award. THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND TO HAVE A JUDGE OR JURY DECIDE THEIR CASE BUT THEY CHOOSE TO HAVE ANY DISPUTES DECIDED THROUGH ARBITRATION."

(Bold typeface and capitalization in original.)

St. Paul's alleges that, in May 2022, its employees and a contractor "inspected the interior of the roof and steeple of the Church when they discovered what appeared to be termite damage on the Church's steeple." A month later, a Terminix employee inspected the church and produced an inspection report that stated that he had found no visible signs of termite activity. Concerned about this discrepancy, St. Paul's engaged "an independent, trained entomologist to inspect the Church on July 21, 2022." According to St. Paul's, the entomologist discovered damage and signs of termite activity "in the stairs going up into the attic, in the bell tower, and on the exterior of the steeple." St. Paul's alleges that it then opened a termite-damage claim with Terminix, but despite Terminix employees inspecting the church multiple times, it did not discover any termite infestation until February 23, 2023. St. Paul's then hired another entomologist, a former inspector for the Alabama Department of

4

Agriculture and Industries, Malinda Tripp-Sampley, to inspect the church and the chapel. On August 9, 2023, Tripp-Sampley inspected the church and the chapel. In the church, she discovered live termite infestations in the roof rafters, in the steeple, and in attic spaces at the front of the church. In the chapel, she found "widespread" termite damage.

On February 5, 2024, St. Paul's commenced a lawsuit against the Terminix defendants in the Mobile Circuit Court. St. Paul's asserted claims of fraudulent misrepresentation; negligent/wanton hiring, training, supervision and retention of employees; negligence and wantonness; bad faith; and breach of contract with respect to the termite damage sustained to the church and to the chapel.

On March 21, 2024, the Terminix defendants filed a motion to compel arbitration of all claims, basing their motion on the arbitration provision in the 2006 contract. The Terminix defendants asserted that "[a]ll of [St. Paul's] causes of action asserted in the Complaint arise out of and relate to its contracts with Terminix, including the 2006 Contract. Thus, under the 2006 Contract's terms, all causes of action must be submitted to binding arbitration."

5

On July 23, 2024, St. Paul's filed a response in opposition to the motion to compel arbitration in which St. Paul's argued that "[t]his matter arises out of a pair of termite control and prevention services agreements executed between [Terminix] and [St. Paul's] on August 1, 1982." St. Paul's asserted that the 2006 contract concerned termite-prevention services for a separate building and, therefore, that arbitration provision contained in the 2006 contract had no bearing on its lawsuit.

The following day the Terminix defendants submitted to the circuit court a reply to the response filed by St. Paul's in which they contended that the arbitration provision speaks for itself and that it clearly encompassed the claims asserted against them in the lawsuit.

On July 26, 2024, the circuit court held a hearing concerning the motion to compel arbitration. On August 9, 2024, the circuit court entered an order denying the motion to compel. The circuit court explained in the order that it believed that the "claims in the Complaint arising from the 1982 agreements are not subject to arbitration."

The Terminix defendants filed a timely notice of appeal. See Rule 4(d), Ala. R. App. P.

6

## II. Standard of Review

"This Court's standard of review on an appeal from a trial court's order granting or denying a motion to compel arbitration is well settled. Bowen v. Security Pest Control, Inc., 879 So. 2d 1139, 1141 (Ala. 2003). A direct appeal is the proper procedure by which to seek review of such an order, Rule 4(d), Ala. R. App. P., and this Court will review de novo the trial court's grant or denial of a motion to compel arbitration. Bowen, 879 So. 2d at 1141. The party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction involving interstate commerce. Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So. 2d 1129, 1132 (Ala. 2003). The party seeking to compel arbitration must present some evidence tending to establish its claim. Wolff Motor Co. v. White, 869 So. 2d 1129, 1131 (Ala. 2003). Once the moving party meets that initial burden, the party opposing arbitration has the burden of presenting evidence tending to show that the arbitration agreement is invalid or that it does not apply to the dispute in question. Bowen, 879 So. 2d at 1141. See also Title Max of Birmingham, Inc. v. Edwards, 973 So. 2d 1050, 1052-53 (Ala. 2007)."

Alabama Title Loans, Inc. v. White, 80 So. 3d 887, 891-92 (Ala. 2011).

## III. Analysis

At the outset of its argument, St. Paul's

"acknowledges that there is an arbitration provision in the 2006 termite prevention and control agreement for the Education Building, and it does not dispute that this agreement was a transaction in interstate commerce supported by consideration given by the parties. … [St. Paul's] instead objected to [the Terminix defendants'] Motion to

7

Compel Arbitration on the grounds that there was no intent between the parties with respect to the 2006 Arbitration provision for it to apply to any disputes arising out of the 1982 termite prevention and control agreements executed twenty-four years before and which involved two separate and discrete buildings. This is a simple contract construction case, and … the 2006 Arbitration provision does not encompass within its scope any disputes outside of the 2006 termite prevention and control agreement and the services and representations flowing from it."

St. Paul's brief, pp. 12-13.

Based on the foregoing argument, St. Paul's does not dispute that there is a binding arbitration agreement between the parties. Instead, it contends that the arbitration provision in the 2006 contract does not apply to the claims it asserts against the Terminix defendants in this lawsuit. In other words, St. Paul's insists that the arbitration provision in the 2006 contract applies only to claims or disputes that involve the education building. Because its claims clearly concern termite damage sustained to the church and to the chapel, which were covered by termite-prevention contract executed in 1982 that did not contain arbitration provisions, St. Paul's maintains that its claims are not subject to arbitration.

The obvious problem with that position is that it is contrary to the language contained in the first part of the 2006 contract's arbitration

8

provision. As we noted in the rendition of the facts, in pertinent part, the arbitration provision states:

> "12. **MANDATORY ARBITRATION**. [St. Paul's] and Terminix agree that any claim, dispute or controversy ('Claim') between or against the other or the employees, agents or assigns of the other, and any Claim arising from or relating to this agreement or the relationships which result from this agreement, including but not limited to any tort or statutory Claim, shall be resolved by neutral binding arbitration by the National Arbitration Forum ('NAF'), under the Code of Procedure ('Code') of the NAF in effect at the time the Claim is filed. … Neither party shall sue the other party with respect to any matter in dispute between the parties other than for enforcement of this arbitration agreement or of the arbitrator's award. …"

(Bold typeface and capitalization in original; other emphasis added.)

The first descriptive phrase of the arbitration provision plainly states that any claim between St. Paul's and Terminix or its agents "shall be resolved by neutral binding arbitration." The first phrase does not limit claims that must be arbitrated to those claims arising from or related to the 2006 contract or to those claims concerning the education building.

St. Paul's attempts to deal with the unequivocal language in the first phrase of the arbitration provision by contending that the phrase is a "general preamble" and that to interpret it as "requir[ing] that all

9

possible disputes whatsoever between the parties are subject to arbitration" "erroneously focuses only on the opening 'general' clause of the arbitration provision while ignoring the more specific and definitive portion of the arbitration provision that defines the intended scope of disputes subject to arbitration." St. Paul's brief, p. 22 (emphasis in original). St. Paul's asserts:

> "The initial general scope language is subsequently qualified by definitive language specifically referencing disputes and relationships involving the 2006 termite prevention control agreement:
>
> > [']**arising from or relating to this agreement or the relationships which result from this agreement** to be subject to arbitration.[']
>
> "… (emphasis added). The unambiguous reference within the 2006 Agreement's arbitration clause to the Agreement itself (and its equally unambiguous reference to the new Education Building) evidences an obvious intent by the parties that the arbitration provision applies only to disputes relating to the services and representations made with respect to the 2006 Agreement and the new Education Building."

Id., p. 23.

We note that,

> "'[u]nder general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract. Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and

10

natural meaning. If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written. On the other hand, if the court determines that the terms are ambiguous (susceptible of more than one reasonable meaning), then the court must use established rules of contract construction to resolve the ambiguity. See [Voyager Life Ins. Co. v.] Whitson, 703 So. 2d [944,] 948 [(Ala. 1997)]. Under those established rules of contract construction, where there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms. See id. at 948-49; Sullivan, Long & Hagerty v. Southern Elec. Generating Co., 667 So. 2d 722, 725 (Ala. 1995).'"

Once Upon a Time, LLC v. Chappelle Props., LLC, 209 So. 3d 1094, 1097 (Ala. 2016) (quoting Homes of Legend, Inc. v. McCollough, 776 So. 2d 741, 746 (Ala. 2000) (some citations omitted)) (emphasis added). See also Ex parte Dan Tucker Auto Sales, Inc., 718 So. 2d 33, 36 (Ala. 1998) ("When interpreting a contract, a court should give the terms of the agreement their clear and plain meaning and should presume that the parties intended what the terms of the agreement clearly state.").

The argument presented by St. Paul's clearly contradicts a plain and natural reading of the arbitration provision. The arbitration provision begins with the subjects who are bound by it -- St. Paul's and Terminix -- and the verb indicating the act the parties are undertaking,

11

i.e., that they "agree" to the terms that follow in the remainder of the provision. The main subjects and the verb are then followed by the first phrase in the arbitration provision: "that any claim, dispute or controversy ('Claim') between or against the other or the employees, agents or assigns of the other." The first phrase ends with a comma, and it is linked to a second phrase by the word "and." The second phrase -- "any Claim arising from or relating to this agreement or the relationships which result from this agreement, including but not limited to any tort or statutory Claim" -- is then followed by the unambiguous command that the claims described in both phrases "shall be resolved by neutral binding arbitration by the National Arbitration Forum ('NAF'), under the Code of Procedure ('Code') of the NAF in effect at the time the Claim is filed." In other words, the two phrases, which are joined by the term "and," stand on their own, and each phrase describes claims that the parties agree are subject to arbitration. In short, the first phrase that concerns "any claim, dispute or controversy … between" St. Paul's and Terminix or its agents is <u>not</u> a "preamble" or a lead-in to the second phrase that concerns claims arising from or relating to the 2006 contract.

12

St. Paul's attempts to support its relegation of the first phrase to the status of a "preamble" by arguing that

> "[t]he only way to give meaning to the phrase 'arising from or relating to this agreement or the relationships which result from this agreement' is for it to be read to mean that only disputes arising from the 2006 Agreement are subject to the arbitration provision. Absent such a reading of that language, as [the Terminix defendants] suggest, renders the subsequent phrase a nullity."

St. Paul's brief, p. 24. In other words, St. Paul's posits that the first phrase cannot mean that any claim between St. Paul's and Terminix or its agents is subject to arbitration because, if that is the case, there is nothing left for the second phrase to cover as being subject to arbitration.

But St. Paul's is ignoring the fact that the two phrases are generally describing different types of claims. The first phrase describes claims of any kind, even those not arising from or relating to the 2006 contract, that are brought by the parties to the contract -- St. Paul's and Terminix. The claims at issue in this lawsuit fall into that category. The second phrase describes any claim that could arise from or be related to the 2006 contract regardless of who brings the claim -- St. Paul's, Terminix, or any other person or entity.

> "That one may be compelled to arbitrate a claim is not necessarily premised on the fact that both participants in the

13

arbitration proceedings are signatories to a contract calling for arbitration. Specifically, this Court has held that in numerous situations one may compel arbitration under a contract to which it is not a party, or that one who is not a signatory to a contract calling for arbitration must nevertheless arbitrate his or her claims. See, e.g., <u>Ex parte Stamey</u>, 776 So. 2d 85, 89 (Ala. 2000) ('[B]oth Federal courts and Alabama courts have enforced exceptions to this rule, so as to allow a nonsignatory, and even one who is not a party, as to a particular contract, to enforce an arbitration provision within that same contract.')."

<u>Green Tree-AL LLC v. White</u>, 55 So. 3d 1186, 1190-91 (Ala. 2010).

Thus, the two phrases are capable of having different fields of operation for describing what claims are subject to arbitration. Interpreting the first phrase to stand on its own does not render the second phrase "surplusage and a nullity," as St. Paul's contends it does, any more than interpreting the second phrase to stand on its own renders the first phrase meaningless. St. Paul's brief, p. 24. Indeed, it is St. Paul's that attempts to render a portion of the arbitration provision a nullity by labeling the first phrase a "general preamble" rather than a substantive part of the arbitration provision.

Moreover, we are not aware of any legal prohibition against two portions of an arbitration agreement encompassing overlapping claims, and St. Paul's has not cited any legal authority for such a proposition. In

14

other words, it is true that a claim arising from or relating to the 2006 contract -- a claim encompassed by the second phrase -- also could be a claim brought by St. Paul's or by Terminix -- a claim encompassed by the first phrase. That overlap could be attributed to careful draftsmanship rather than unnecessary redundancy.

The only other argument offered by St. Paul's attempts to address a scenario in which we determine the arbitration provision to be "vague and ambiguous." St. Paul's brief, p. 26. It argues that if the language in the arbitration provision is ambiguous, the circuit court's denial of the Terminix defendants' motion to compel arbitration must be upheld because ambiguities must be construed against the drafter of the agreement, which in this case was Terminix. That argument is irrelevant because we find the arbitration provision's language to be plain and straightforward. There is no mystery as to whether the claims asserted by St. Paul's against the Terminix defendants are addressed in the arbitration provision. The arbitration provision clearly states that St. Paul's and Terminix have agreed to arbitrate "any claim, dispute or controversy ('Claim') between or against the other or the employees, agents or assigns of the other." That provision describes the claims by St.

Paul's against the Terminix defendants in this lawsuit. Therefore, in the context of this case, the arbitration provision is not ambiguous.[1]

### IV. Conclusion

Based on the foregoing, the circuit court's order denying the motion to compel arbitration of the claims asserted by St. Paul's against the

---

[1]St. Paul's spends several pages in its appellate brief arguing that a rule of construction that states that ambiguities in an arbitration provision will be construed in favor of arbitration must be overruled under the holding of the United States Supreme Court in Morgan v. Sundance, Inc., 596 U.S. 411 (2022). See, e.g., SSC Selma Operating Co. v. Fikes, 238 So. 3d 635, 638 (Ala. 2017) ("'In the event of an ambiguity or uncertainty over the applicability of an arbitration clause, federal policy dictates that it be resolved in favor of arbitration.'" (quoting Koullas v. Ramsey, 683 So. 2d 415, 417 (Ala. 1996))); Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc., 745 So. 2d 271, 274 (Ala. 1999) ("If an uncertainty or ambiguity exists as to whether the arbitration provision applies, then this Court is bound to resolve that uncertainty or ambiguity in favor of arbitration."). In Morgan, the United States Supreme Court stated that "the [Federal Arbitration Act's] 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." 596 U.S. at 418. St. Paul's contends that this means that "[a]ny artificially created rules or presumptions favoring arbitration above what the ordinary and established law of contracts requires are not justified under the [Federal Arbitration Act]." St. Paul's brief, p. 15. Because we conclude that the arbitration provision in this case is not ambiguous, we do not address the argument presented by St. Paul's based on Morgan.

Terminix defendants is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Shaw, Bryan, Sellers, and Cook, JJ., concur.

Stewart, C.J., concurs in the result, with opinion.

Wise, McCool, and Lewis, JJ., concur in the result.

STEWART, Chief Justice (concurring in the result).

The arbitration provision at issue in this case is exceptionally broad -- it is what one commentator has dubbed an "infinite arbitration clause." See David Horton, Infinite Arbitration Clauses, 168 U. Pa. L. Rev. 633 (2020). It requires that "any claim, dispute or controversy … between or against" St. Paul's Episcopal Church ("St. Paul's") and The Terminix International Co., L.P. ("Terminix"), or agents of Terminix, such as Ken Stroh and Faith Justice, be submitted to arbitration. As the main opinion notes, this language is not limited merely to claims arising out of the contract containing the arbitration provision; its reach extends to any dispute between the parties no matter the time, place, or subject of the dispute. Indeed, if a Terminix employee operating a company truck were to negligently cause a motor-vehicle accident with St. Paul's church bus, St. Paul's would, theoretically, be forced to arbitrate its tort claim against Terminix and its employee because of the arbitration provision found in the nearly two decades' old termite-prevention-and-control contract for St. Paul's education building. Does the law truly compel such an "absurd" result? See Smith v. Steinkamp, 318 F.3d 775, 777 (7th Cir. 2003) (commenting on the "absurd results" that potentially follow from a

18

provision in a loan contract requiring arbitration of all future disputes between the parties).

"Under Alabama law, the specific enforcement of a predispute arbitration agreement violates both our statutory law and public policy, unless federal law preempts state law." Lopez v. Home Buyers Warranty Corp., 670 So. 2d 35, 37 (Ala. 1995); see also § 8-1-41(3), Ala. Code 1975. We have long recognized that the Federal Arbitration Act ("the FAA"), 9 U.S.C. § 1 et seq., preempts Alabama law "'to the extent that [Alabama law] actually conflicts with [the FAA] -- that is, to the extent that it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."'" Alabama Psychiatric Servs., P.C. v. Lazenby, 292 So. 3d 295, 300 (Ala. 2019) (quoting Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 477 (1989), quoting in turn, Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).

The FAA has its limits, however, and its enforcement powers do not apply to all agreements containing an arbitration provision. See New Prime Inc. v. Oliveira, 586 U.S. 105, 110 (2019). "The parties' private agreement may be crystal clear and require arbitration of every question under the sun, but that does not necessarily mean the [FAA] authorizes

19

a court to stay litigation and send the parties to an arbitral forum." Id. at 111. Section 2 of the FAA provides:

> "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration <u>a controversy thereafter arising out of such contract</u> or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4[ of the FAA, 9 U.S.C. § 401 et seq.]"

9 U.S.C. § 2 (emphasis added). Thus, the text of the FAA limits its enforcement mandate to disputes "arising out of" the contract containing the arbitration provision, and there is an increasing recognition by courts that arbitration provisions do not fall within the FAA's enforcement mandate when the claims at issue do not relate to the contract containing the arbitration provision.

Abbas v. Truist Bank, 774 F. Supp. 3d 929 (M.D. Tenn 2025), is one such recent example. In Abbas, two bank customers opened a deposit account and signed an agreement requiring them to arbitrate any claim arising out of or relating to "'any aspect of [their] relationship'" with the bank. Id. at 932. Years later, the customers leased a safety deposit box

20

from the bank, and that lease agreement did not contain an arbitration provision. When the contents of the safety deposit box were lost, the customers sued the bank in federal district court, and the bank moved to compel arbitration, citing the arbitration provision contained in the deposit-account agreement. The district court denied the bank's motion, concluding that the dispute did not arise out of the contract containing the arbitration provision and, thus, that the FAA did not compel arbitration of the customers' claims. In reaching its conclusion, the district court summarized the law regarding § 2's arising-out-of requirement:

> "The FAA's Section 2 'create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the act.' Moses H. Cone [Mem'l Hosp. v. Mercury Constr. Corp.], 460 U.S. [1,] 24, 103 S.Ct. 927 [(1983)]. 'The FAA applies to "[a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract."' Statler v. T.K. Constructors Inc., 448 F.3d 343, 345 (6th Cir. 2006) (quoting 9 U.S.C. § 2); accord Viking River Cruises, Inc. v. Moriana, 596 U.S. 639, 652 n. 4, 142 S.Ct. 1906, 213 L.Ed.2d 179 (2022) ('"[A]rising out of" language normally refers to a causal relationship.') (citing Ford Motor Co. v. Mont. Eight Jud. Dist. Ct., 592 U.S. 351, 361-62, 141 S.Ct. 1017, 209 L.Ed.2d 225 (2021)).

> "'[Sections] 3 and 4 of the Act often require a court to stay litigation and compel arbitration "accord[ing to] the terms" of the parties' agreement. But this authority doesn't

21

extend to <u>all</u> private contracts, no matter how emphatically they may express a preference for arbitration.' <u>New Prime Inc. v. Oliveira</u>, 586 U.S. 105, 110, 139 S.Ct. 532, 202 L.Ed.2d 536 (2019) (emphasis original). Indeed, 'antecedent statutory provisions,' including Section 2, 'limit the scope of the court's powers under §§ 3 and 4.' <u>Id.</u> That is, '[w]hile a court's authority under the [FAA] to compel arbitration may be considerable, it isn't unconditional.' <u>Id.</u> Rather, 'the terms of § 2 limit the FAA's enforcement mandate to agreements to arbitrate controversies that "arise out of" the parties' contractual relationship.' <u>Viking River Cruises, Inc.</u>, 596 U.S. at 652 n. 4, 142 S.Ct. 1906; <u>see also</u> <u>Davitashvili[ v. Grubhub Inc.]</u>, 131 F.4th [109,] 119 [(2d Cir. 2025)]('The FAA's scope is limited to "agreements to arbitrate controversies that 'arise out of' the parties' contractual relationship."' (quoting <u>Viking River</u>, 596 U.S. at 652 n.4, 142 S.Ct. 1906)).

"More pointedly, the Second Circuit panel in <u>Davitashvili</u> 'agree[d] unanimously' that 'Section 2 … applies <u>only</u> to contracting parties' agreements to arbitration claims "<u>arising out of such contract</u> or transaction."' 131 F.4th at 121 (Pérez, J., concurring) (emphasis added). The same panel also 'agree[d] unanimously that one consequence of that principle is that the FAA does not countenance motions to compel arbitration of claims that lack a requisite "nexus" to the contract containing the arbitration clause.' <u>Id.</u> (citations omitted). … That is, 'when the dispute is wholly unrelated to the contract, the FAA is silent; federal courts have no power to compel arbitration.' <u>Revitch v. DIRECTV, LLC</u>, 977 F.3d 713, 723-24 (9th Cir. 2020) (O'Scannlain, J., concurring) (citing David Horton, <u>Infinite Arbitration Clauses</u>, 168 U. Pa. L. Rev. 633, 678-83 (2020); Stephen E. Friedman, <u>The Lost Controversy Limitation of the Federal Arbitration Act</u>, 46 U. Rich. L. Rev. 1005, 1006 (2012)); <u>see also</u> <u>Calderson v. Sixt Rent a Car, LLC</u>, 5 F.4th 1204, 1213 (11th Cir. 2021) ('"[T]he 'arising out of' language in § 2 … confines the FAA's application to the arbitration of controversies with a sufficiently close 'relationship' to the underlying contract."')

22

(quoting <u>Revitch</u>, 977 F.3d at 722 (O'Scannlain, J., concurring)); <u>accord</u> <u>Runzi v. Synchrony Bank</u>, 713 F. Supp. 3d 1360, 1364 (N.D. Ga. 2024) ('[T]he FAA applies only to controversies that arise out of the contract that contains the arbitration clause.') …; <u>McFarlane[ v. Altice USA, Inc.]</u>, 524 F. Supp. 3d [244,] 278 [(S.D.N.Y. 2021)] ('[T]o the extent that the Arbitration Provision purports to require arbitration of claims wholly unrelated to the contract in which it is contained, it is arguably not even subject to the FAA and its policy favoring arbitration.').

"Put another way, 'a defendant may not compel arbitration of claims that are "completely unrelated" to the underlying … contract in which the agreement to arbitrate was made.' <u>Davitashvili</u>, 131 F.4th at 125 (Sullivan, J., concurring in part and dissenting in part) (quoting <u>Revitch</u>, 977 F.3d at 722 (O'Scannlain, J., concurring)). 'This means,' Judge Sullivan continued, 'that, at least in some cases, a dispute will be so untethered from the parties' initial transaction that the FAA … will not apply[.]' <u>Id.</u> at 125-26 (Sullivan, J.)."

<u>Abbas</u>, 774 F. Supp. 3d at 943-44.

In this case, St. Paul's claims pertain to termite infestations and resulting damage to its church and chapel buildings, structures covered under separate 1982 contracts between St. Paul's and Terminix. Those contracts do not contain arbitration provisions. The 2006 contract containing an arbitration provision pertains only to the education building, and it does not reference the 1982 contracts or the church or chapel buildings. St. Paul's claims do not relate to the education

building, which has not suffered termite damage, and its claims do not arise from its 2006 contract with Terminix regarding that structure. Nor does the 2006 contract contain a delegation clause requiring questions of arbitrability to be decided by an arbitrator. Thus, although the dispute between St. Paul's and the Terminix defendants arguably falls within the scope of the expansive arbitration provision in the 2006 contract, the parties' dispute in this case does not "aris[e] out of such contract." 9 U.S.C. § 2.

As explained above, the text of the FAA does not compel arbitration of disputes that are wholly unrelated to the contract containing the arbitration agreement. Therefore, in such cases, the FAA does not actually conflict with Alabama's public policy against the enforcement of predispute arbitration agreements. In other words, if the FAA does not compel enforcement of a particular arbitration agreement, Alabama law certainly does not.[2]

---

[2]I note that some courts have also concluded that infinite arbitration clauses are unconscionably overbroad or have refused to compel arbitration under contract-formation principles -- i.e., that no reasonable person would have intended to agree to such an expansive arbitration clause. See, e.g., McFarlane v. Altice USA, Inc., 524 F. Supp. 3d 264, 276-78 (S.D.N.Y. 2021).

24

The parties' dispute in this case does not arise out of the 2006 contract; nor have the parties delegated questions of arbitrability to an arbitrator. Therefore, had this issue been raised, I would have been inclined to conclude that the FAA does not compel enforcement of the arbitration provision in the 2006 contract. St. Paul's, however, has not raised that argument in either the trial court or in its briefing to this Court. To the contrary, it has essentially conceded the FAA's application to this case. Thus, I must concur with the majority's decision to enforce that provision.